In re Joy DAVIS, Debtor.

Jeffrey BROWN, Movant,

v.

Joy DAVIS, Respondent.

Bankruptcy No. 92–60351.

United States Bankruptcy Court,
S.D. Georgia,
Statesboro Division.

June 29, 1993.

---

R. Kenny Stone, Statesboro, GA, for movant.

R. Wade Gastin, Savannah, GA, for respondent.

### ORDER

JOHN S. DALIS, Bankruptcy Judge.

Jeffrey Brown, a creditor, objects to confirmation of the debtor's proposed Chapter

13 plan. Based on the evidence presented at hearing, I make the following findings.

### FINDINGS OF FACT

The debtor, Joy Davis, was formerly married to Jeffrey Brown. During the marriage, the parties built a house on 3.08 acres of jointly-owned land situated in the middle of land owned by debtor's mother. Members of Ms. Davis' family assisted in the construction of the house. Mr. Brown also helped in building the house, physically and financially. To finance the construction of the house, the parties borrowed Fifty–Four Thousand Eight Hundred and No/100 ($54,800.00) Dollars from First Union National Bank of Georgia.[1] The mortgage payment is Four Hundred Fifty and 83/100 ($450.83) Dollars per month. During the marriage, Ms. Davis and Mr. Brown each earned approximately One Thousand Four Hundred and No/100 ($1,400.00) Dollars income per month at their respective jobs, which together was sufficient to meet the mortgage payment to First Union as well as their other financial obligations.

Shortly after closing the loan with First Union, debtor filed a complaint for divorce in the appropriate state forum. By order dated April 23, 1992 the Superior Court of Screven County, Georgia entered a final judgment and decree of divorce, providing in relevant part as follows:

> The Court finds that the real property of the parties is peculiarly situated, in the middle of the Plaintiff Wife's family property. The Court further finds, however, that the Defendant Husband has created, through his labor and financial contribution to the residence, certain equity in this property. The Court must balance the equities of the parties concerning the real property. Therefore, the Court hereby awards to the Plaintiff the house and 3.08 acres and all that is there by way of improvements....
>
> *Said devise to the Plaintiff is expressly conditioned, however, upon the Plaintiff meeting the following terms and conditions:*

---

1. First Union National Bank of Georgia assigned the note evidencing the indebtedness to First Union Mortgage Corporation, the secured claim holder in this case.

698

(a) The parties, during the marriage, made a commitment to the Plaintiff's brother, Jeff Davis, that a shed having the equivalent value of three thousand dollars ($3,000) would be supplied by the parties to compensate Mr. Davis for his labors in constructing their residence. I hereby require that the Plaintiff assume all responsibility for repayment to her brother of whatever claim he may have arising out of the construction of the parties' residence. In addition, the Plaintiff shall hold the Defendant harmless from any and all claims that might be brought by her brother for his labor in the residence, and shall fully indemnify the Defendant in the event that any claim may be brought, including any costs and attorneys [sic] fees incurred by the Defendant in defending against said claim.

. . . .

(c) I direct that the Plaintiff assume full and complete responsibility for the repayment of the following bills and expenses incurred by the parties during the marriage:

| Creditor | Present Balance |
|---|---|
| Possum Eddy | $ 2,005.75 |
| First Union (installment note) | $ 3,225.24 until 4/21 |
| First Union (mortgage) | $54,800.00 |
| Discover Card | $ 2,453.69 until 5/11 |
| MasterCard | $ 2,164.00 until 5/20 |
| Sears | $ 1,416.24 until 5/4 |

The Plaintiff shall make all payments to the above-listed creditors as same fall due so as not [sic] impair the Defendant's credit. Nothing contained in this Order, however, shall be construed as a bar to the Plaintiff consolidating said debts, obtaining a second mortgage, or otherwise arranging to pay said debts in a timely manner. The Plaintiff shall also fully indemnify and hold the Defendant harmless from any and all obligation to repay said indebtedness, including any costs of collection and attorneys [sic] fees. The Plaintiff's obligation to pay said indebtedness shall be deemed to be alimony to the Defendant and shall not be dischargeable in any bankruptcy proceeding which may be filed by the Plaintiff.

. . . .

*Upon the Plaintiff's payment of the above-listed debts, the Defendant shall be required to deliver to the Plaintiff a quitclaim deed transferring all of his right, title, and interest in and to the parties' 3.08 acres of land, the residence, and all improvements thereon. The Plaintiff's payment of the parties' marital debts shall be in lieu of any award of equity to the Defendant, and Plaintiff's receipt of the Defendant's share of the equity is expressly conditioned upon her discharge of the obligations contained herein.*

*Brown v. Brown,* Civil Action No. 1S91DR114N pp. 2–4 (Superior Ct. Screven County, Georgia April 20, 1992) (emphasis added).

On July 2, 1992 Ms. Davis filed a Chapter 13 petition in this court. Under the debtor's proposed Chapter 13 plan, she will make direct payments to First Union according to the terms of the mortgage contract and monthly payments to the Chapter 13 trustee of Three Hundred Seventy–Five and No/100 ($375.00) Dollars for a period of 60 months to fund her plan. Secured creditors will retain their liens and receive payment equal to the lesser of the amount of their claim or the value of their collateral as provided in the plan. Unsecured creditors will receive a pro rata dividend on their respective claims, which the trustee projects will be 10% if plan payments are increased to Four Hundred Eighty and No/100 ($480.00) Dollars per month.

The petition reflects that debtor's total net monthly income as of the date of the petition was One Thousand Four Hundred Twelve and No/100 ($1,412.00) Dollars; her itemized monthly living expenses, which I find reasonable, total One Thousand Thirty–Seven and No/100 ($1,037.00) Dollars. At hearing on Mr. Brown's objection, debtor testified that her net monthly income is One Thousand Two Hundred Twenty–Two and No/100 ($1,222.00) Dollars from her job,[2] plus One Hundred Twenty and No/100 ($120.00) Dollars from other sources. Based on her testimony, debtor's monthly disposable income is Three Hundred Five and No/100 ($305.00)

**2.** Debtor testified that she changed jobs since filing her petition.

Dollars. Mr. Brown's objection to confirmation is that debtor proposes her Chapter 13 plan in bad faith. He contends debtor attempts with her Chapter 13 plan to modify the Superior Court's divorce decree.[3]

### CONCLUSIONS OF LAW

"Good faith," a requirement for confirmation of a Chapter 13 plan, 11 U.S.C. § 1325(a)(3), is not defined in the Bankruptcy Code. Although a comprehensive definition of good faith is not practical, the basic inquiry should be "'whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [Chapter 13] in the [proposed plan].'" *In re: Kitchens,* 702 F.2d 885 (11th Cir.1983) [quoting 9 *Collier on Bankruptcy,* ¶ 9.20 at 319 (L. King 14th ed. 1978)]. *See also In re: Waldron,* 785 F.2d 936 (11th Cir.1986). In *Kitchens* the Eleventh Circuit Court of Appeals approved a nonexhaustive list of 13 factors used by other courts to ascertain a Chapter 13 debtor's good faith:

1. the amount of the debtor's income from all sources;

2. the living expenses of the debtor and his [or her] dependents;

3. the amount of attorney's fees;

4. the probable or expected duration of the debtor's Chapter 13 plan;

5. the motivations of the debtor and his [or her] sincerity in seeking relief under the provisions of Chapter 13;

6. the debtor's degree of effort;

7. the debtor's ability to earn and the likelihood of fluctuation in his [or her] earnings;

8. special circumstances such as inordinate medical expenses;

9. the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessor;

10. the circumstances under which the debtor has contracted his [or her] debts and his [or her] demonstrated bona fides, or lack of same, in dealing with his [or her] creditors;

11. the burden which the plans' administration would place upon the trustee;

12. the substantiality of repayment; and

13. the potential nondischargeability of debt in a Chapter 7 proceeding.

*Kitchens, supra,* at 888–89.

Mr. Brown grounds his bad faith argument solely on his contention that debtor filed her petition only for the purpose of circumventing the effects of the divorce decree.[4] It is true that in ascertaining good faith, the bankruptcy court may look for manifestations of bad faith, such as filing the petition for an improper purpose. *E.g., Waldron, supra* (financially secure husband and wife filed a Chapter 13 petition for the sole purpose of rejecting an option contract which they felt was not as profitable as it could be). According to Mr. Brown,

> [t]he plan proposed by Debtor is a blatant attempt to use the Bankruptcy Court to modify the objectionable provisions of the divorce decree. . . .

> This bankruptcy proceeding simply represents a change of forum in the on-going legal battle between the parties. The Debtor was not happy with the judgment in the state court proceeding and now desires to rewrite the divorce decree to her satisfaction. This is a clear abuse of the bankruptcy process, and confirmation of the plan proposed by the Debtor would contravene the directives of the Eleventh Circuit in *Carver* [*v. Carver,* 954 F.2d 1573 (11th Cir.1992) ].

Brown's letter brief dated December 16, 1992, at 4–5. In addition, Mr. Brown relies

---

**3.** Mr. Brown, and debtor in response, raised the issue of dischargeability of the subject debts. That issue, however, is not properly before me, *see* Federal Rule of Bankruptcy Procedure 7001, and therefore is not addressed.

**4.** Mr. Brown does not distinguish the requirement that a Chapter 13 petition be filed in good faith and the requirement that a Chapter 13 plan be proposed in good faith. *See generally In re:*

*Young,* Ch. 13 case No. 92–41728 (Bankr.S.D.Ga. Davis, C.J. April 19, 1993); *see also In re Robinson,* 18 B.R. 891, 893 (Bankr.D.Conn.1982) (Chapter 13 petition filed in bad faith may be dismissed pursuant to 11 U.S.C. § 1307(c) prior to a hearing on confirmation). As this case is at the confirmation stage, this order addresses only the good faith analysis required under 11 U.S.C. § 1325(a)(3).

on other cases which expound on 11 U.S.C. § 1325(a)(3)'s good faith requirement.

■ In *Carver* the 11th Circuit Court of Appeals held that bankruptcy courts should abstain from resolving issues that would entangle them in family law matters best left to the state courts. *Carver, supra,* at 1578–79. The Eleventh Circuit stated,

"The reasons for federal abstention in these [types of] cases are apparent: the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts." [*Crouch v.*] *Crouch,* 566 F.2d [486,] 487 [ (5th Cir.1978) ].

. . . .

[T]he concerns underlying this abstention doctrine are also present in bankruptcy. The state interest in ensuring that dependents are adequately provided for is certainly strong. Decisions which involve alimony or child support, generally under continuing supervision by the state courts, could require the bankruptcy court to second guess the state court on such matters and could produce conflicting court decrees further aggravating an already delicate situation. Nor was it "the 'intent of the new Bankruptcy Code to convert the bankruptcy courts into family or domestic relations courts—courts that would in turn, willynilly, modify divorce decrees of state courts insofar as these courts had previously fixed the amount of alimony and child support obligations of debtors.' " *Caswell* [*v. Lang* ], 757 F.2d [608,] 610–11 [ (4th Cir.1985) ] (quoting *In re Garrison,* 5 B.R. 256, 260 (Bankr.E.D.Mich.1980)). "It is appropriate for bankruptcy courts to avoid incursions into family law matters 'out of consideration of court economy, ju-

dicial restraint, and deference to our state court brethren and their established expertise in such matters.' " *In re MacDonald,* 755 F.2d [715,] 717–19 [ (9th Cir.1985) ] (quoting *In re Graham,* 14 B.R. 246, 248 (Bankr.W.D.Ky.1981)).

*Carver, supra,* at 1578–79. Thus, out of concerns of comity and judicial economy, where appropriate the bankruptcy court should exercise its discretion under 28 U.S.C. § 1334(c)(1) to abstain from hearing a proceeding that would embroil it in state law matters. *Id.*

■ Mr. Brown's argument, and reliance on *Carver,* is inapplicable here. Although the bankruptcy court, as all other federal courts, should avoid incursions into domestic matters, the concerns that may warrant abstention under *Carver* are not raised in this case, at this juncture. The issue before me is whether debtor proposed her Chapter 13 plan in "good faith," under 11 U.S.C. § 1325(a)(3). Resolution of this issue does not require this court to "delve too deeply into family law," *id.* at 1580, nor will it result in conflicting judgments or modification of the divorce decree within the meaning of *Carver. Id.* at 1579.[5] This is not a situation where a federal court is called upon to resolve an issue previously resolved by a state court, which could result in the federal court second-guessing the state court's decision. Therefore, the abstention doctrine does not apply here. Moreover, contrary to Mr. Brown's reading of *Carver,* the concerns outlined in *Carver* regarding federal abstention do not necessarily render a debtor's proposed plan nonconfirmable under 11 U.S.C. § 1325(a)(3) just because a divorce decree is the source of much of the debt provided for in the plan; the content and effect of the divorce decree could conceivably bar such a debtor from obtaining a discharge of a particular debt, *see generally* 11 U.S.C.

**5.** The divorce decree specifically conditions debtor's receipt of Mr. Brown's unspecified equity share in the house on debtor's payment of the marital debts listed therein. If debtor fails to pay these debts pursuant to the terms of the divorce decree, Mr. Brown retains his equity in the house. If debtor receives a Chapter 13 discharge in this case, *see* 11 U.S.C. § 1328(a), her personal liability for all dischargeable prepetition debts

is discharged. Therefore, debtor may be relieved of personal liability for the debts listed in the divorce decree upon the completion of her Chapter 13 plan. A discharge, however, would not affect the divorce decree's conditioning debtor's receipt of Mr. Brown's equity on her full payment of the subject obligations. If she fails to pay them, discharge or not, he is not required to transfer his interest in the property to her.

§ 523(a)(5), but it does not prevent the debt- or from proposing a Chapter 13 plan in "good faith."

 The evidence in this case supports a finding of good faith. During the marriage debtor and Mr. Brown benefitted from two incomes, which, when combined, enabled them to maintain a standard of living neither could maintain independently. Following the divorce, the bulk of the marital obligations are borne by debtor, to service with her income only. Debtor's income has not in- creased since the divorce and no evidence presented indicates it will during her pro- posed plan. As her present income is insuffi- cient to pay her debts, without bankruptcy, debtor faces the same financial ruin as any other individual whose debt, for whatever reason, exceeds ability to pay. Chapter 13 is designed to provide individual debtors in fi- nancial distress with a way to rehabilitate themselves through meaningful repayment of their debts consistent with their available resources. This debtor is no exception. That the subject debts are her sole responsi- bility as the result of a divorce decree does not preclude her from proposing a Chapter 13 plan in good faith. Her income is modest; her budgeted living expenses are reasonable; although the dividend unsecured creditors will likely receive is not substantial, debtor proposes to devote all of her disposable in- come to fund her plan for a period of five years; and, having determined that the exis- tence of the divorce decree and its financial impact on debtor does not equate to a bad faith petition, from debtor's testimony her motivation in filing this Chapter 13 case ap- pears consistent with the spirit and purpose of Chapter 13. Accordingly, I find her peti- tion meets the "good faith" test of 11 U.S.C. § 1325(a)(3).

It is therefore ORDERED that the objec- tion to confirmation filed by Jeffrey Brown is overruled; the clerk will notice interested parties of a continued confirmation hearing.