Edward CARVER, Plaintiff–Appellee,

v.

Paulette CARVER, Gasper L. Toole, III, Frampton W. Toole, III, and Richard L. Pearce, Defendants–Appellants.

No. 91–8481.

United States Court of Appeals, Eleventh Circuit.

March 6, 1992.

**1574**

A. Rowland Dye, John B. Long, Augusta, Ga., for defendants-appellants.

Terrene P. Leiden, L.E. Maioriello, Augusta, Ga., for plaintiff-appellee.

Before FAY and HATCHETT, Circuit Judges, and GIBSON *, Senior Circuit Judge.

FAY, Circuit Judge:

Defendants-appellants Paulette Carver, Gasper Toole, Frampton Toole, and Richard Pearce were fined by the Bankruptcy Court for the Southern District of Georgia for wilfully violating the automatic stay provisions of 11 U.S.C. § 362(a). The district court affirmed. For the reasons which follow, we REVERSE.

## BACKGROUND

Edward and Paulette Carver were previously husband and wife. They were granted a divorce in October 1988 by the Family Court of Aiken County, South Carolina. The court ordered that Edward Carver pay $325 per month in child support and awarded Paulette Carver use and possession of the marital home, although Edward Carver was ordered to pay the mortgage, taxes, and insurance on the home until their youngest child reaches the age of eighteen, at which time the property is to be sold and the net proceeds divided between Edward and Paulette Carver.

In February 1989, Mr. Carver filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Southern District of Georgia. Mr. Carver did not list his ex-wife, Paulette Carver, as a creditor of his bankruptcy estate, nor was she listed on the list of creditors who would

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

normally receive notices from the Bankruptcy Court. As a result, neither Paulette Carver nor her attorney, appellant Richard Pearce, were notified of Mr. Carver's bankruptcy petition.

On March 10, 1989, Paulette Carver, through her attorney, Richard Pearce, filed a contempt action against Mr. Carver in the Family Court because the mortgage on the marital home was approximately $6600 in arrears, and the mortgage company had instituted foreclosure proceedings.[1] Mr. Pearce learned of Mr. Carver's bankruptcy petition on March 13, 1989, when he received a copy of the first page of the petition from the Court of Common Pleas of South Carolina, in which the foreclosure action had been filed. Mr. Pearce then attempted to obtain a copy of Mr. Carver's bankruptcy petition from Mr. Carver's attorney. After repeated attempts, Mr. Pearce was unable to obtain the remainder of the petition or the Chapter 13 plan.

On March 23, 1989, the contempt matter was heard by Judge Peter Nuessle of the Family Court of the Second Judicial Circuit of South Carolina. Mr. Carver appeared at that hearing, but was not represented by counsel.[2] At the hearing, Mr. Pearce informed the court of Mr. Carver's bankruptcy petition, but argued:

> [I]n the normal scheme of things bankruptcy does stay proceedings. However, in bankruptcy that does not apply to matters involving Family Court and child support payments....

> ....

It is readily apparent to me that Mr. Carver only pays this mortgage payment or brings it current when we file some sort of action to come before this Court to have the original decree enforced. He has given numerous excuses to his lawyer and to me of what he is going to do. What he hasn't done is comply with this Court Order.

Transcript of March 23, 1989 hearing, Family Court of the Second Judicial Circuit of South Carolina, R.Pleadings Exh. at 213–14.[3]

The court then asked Mr. Carver why he had not made the payments. Mr. Carver testified that he had been trying to borrow the money, and that he wanted to bring the mortgage current. He further testified that he held the same job he had at the time of the final divorce decree, and was making the same salary.

After the hearing, the court held Mr. Carver in contempt, sentenced him to six months in jail, and issued a bench warrant for his immediate arrest. The court ruled that this sentence would be suspended if Mr. Carver paid all arrearages and charges due the mortgage holder. Further, the court awarded Paulette Carver attorneys' fees, finding that it was necessary for her to bring the contempt action. After Mr. Carver served seven and one-half days in jail, his new wife, Wilhemina Carver, paid the amount due ($8,792.48) with money borrowed from her father. Mr. Carver was then released.

Following his release from jail, Mr. Carver brought an action in the Bankruptcy

---

1. Paulette Carver was initially awarded use of the marital home with Edward Carver responsible for making the mortgage payments in a preliminary order of the Family Court in September 1987. Between that initial order and the final divorce decree, Mr. Carver fell behind in the mortgage payments and the mortgage company instituted foreclosure proceedings. Paulette Carver filed a motion seeking to have Mr. Carver held in contempt. The court did not hold Mr. Carver in contempt, but ordered him to bring the payments current, which he did. The contempt proceeding underlying the case at bar was therefore the second time Paulette Carver had been forced to resort to legal process to get Mr. Carver to bring the mortgage current.

2. Mr. Carver did not explain at the hearing why he was not represented by counsel. At the conclusion of his testimony at the hearing, he did request a continuance in order to obtain counsel, but offered no further explanation. The court never responded to that request, and so implicitly denied it.

3. Mr. Pearce, who does not practice bankruptcy law, sought the advice of a bankruptcy attorney, William H. Short, Jr., as to whether the contempt proceedings in the Family Court were stayed by Mr. Carver's filing for bankruptcy protection. Mr. Pearce was advised by Mr. Short that in his opinion the contempt action was exempted from the automatic stay because it was to collect arrearages in support.

Court for the Southern District of Georgia against his ex-wife, Paulette Carver, her attorney, Richard Pearce, and Mr. Pearce's law partners for damages occassioned by the willful violation of the automatic stay provisions of 11 U.S.C. § 362. After a hearing, the bankruptcy court found that appellants had willfully violated the stay and awarded Mr. Carver $18,295.78 in damages.[4] The district court affirmed the decision but allowed appellants credit for amounts spent to cure the mortgage arrearage and deducted the amount of Mr. Carver's earnings loss from his general damages. This appeal followed.

## DISCUSSION

On appeal, appellants argue that the contempt action in state court was not stayed because it involved collection of delinquent support payments, and that as the arrearages were paid from money borrowed from Mr. Carver's new father-in-law, no violation of the automatic stay occurred. Although we disagree that the state court proceedings at issue in this case were excepted from the automatic stay provisions of 11 U.S.C. § 362(a), we nevertheless reverse the judgment of the district court because we hold that the bankruptcy court should have abstained from entertaining Mr. Carver's request for relief.[5]

### A. Automatic Stay

The automatic stay provisions of the Bankruptcy Code are quite broad. 11 U.S.C. § 362(a) provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been com-

menced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title. . . .

Under this provision, *all* proceedings against the debtor or the debtor's property are stayed during the pendency of the bankruptcy proceedings. Unless the action comes under an exception in 11 U.S.C. § 362(b) or a party seeks relief from the stay under 11 U.S.C. § 362(d), the stay remains in effect until the case is disposed of by the court. 11 U.S.C. § 362(c). This stay relieves the debtor from financial pressure during the pendency of bankruptcy proceedings. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97 (hereinafter H.R.Rep.). However, the stay also protects creditors by preventing the premature disbursement of the bankruptcy debtor's estate. "Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors." *Id.*, 1978 U.S.C.C.A.N. at 6297; *see also Hunt v. Bankers' Trust Co.*, 799 F.2d 1060, 1069 (5th Cir.1986) ("The purpose of the automatic stay is to protect creditors in a manner consistent with the bankruptcy goal of equal treatment.").

Subsection (b) of section 362, however, provides several exceptions from the automatic stay. 11 U.S.C. § 362(b). Citing section 362(b)(2), appellants argue that the automatic stay does not apply to actions involving alimony or child support. We disagree. Section 362(b)(2) provides an exception from the automatic stay for "the collection of alimony, maintenance, or support from property that is not property of the estate." Although appellants are correct that this provision addresses alimony and child support, it clearly does not provide an

---

**4.** This figure included $1000 per day for Mr. Carver's loss of freedom, loss of income, expenses, and attorneys' fees.

**5.** Appellants also argue that the state court actions involved criminal contempt and therefore

came under the exception of 11 U.S.C. § 362(b)(1). Because we find that the bankruptcy court should have abstained from hearing this matter, we need not address this issue.

exception from the automatic stay for *all* actions involving alimony, maintenance, or support. For example, the Ninth Circuit has interpreted the language of this exception as applying only to actions for *collection* of alimony, maintenance, or support, not actions for *modification* of child support. *In re Stringer*, 847 F.2d 549, 552 (9th Cir.1988).

■ More importantly, this provision expressly limits its coverage to actions seeking "property that is not property of the estate." Under 28 U.S.C. § 1334(d), the federal district court[6] has exclusive jurisdiction over all the debtor's property as of the date of filing in bankruptcy and over all property of the estate. "Property of the estate" generally includes all the debtor's property as of the commencement of the bankruptcy case. *See* 11 U.S.C. § 541. However, when a debtor files under Chapter 13 of the Bankruptcy Code, the estate also includes property and earnings of the debtor acquired *after* filing for bankruptcy but before the disposition of the case. 11 U.S.C. § 1306(a).

The exception in 11 U.S.C. § 362(b)(2) strikes a balance between the goals of protecting the bankruptcy estate from premature disbursement and protecting the spouse and children of the debtor.

> The automatic stay is one means of protecting the debtor's discharge. Alimony, maintenance and support obligations are excepted from discharge. Staying collection of them, when not to the detriment of other creditors (because the collection effort is against property that is not property of the estate), does not further that goal. Moreover, it could lead to hardship on the part of the protected spouse or children.

H.R.Rep. No. 595, 95th Cong., 2d Sess., 1978 U.S.C.C.A.N. at 6299.

Therefore, although the Bankruptcy Code does provide an exception from the automatic stay for the collection of alimony, maintenance, or support, that exception is very narrow—*i.e.,* collection efforts may only be made against property that is not property of the estate. Generally that will include property and earnings acquired by the debtor after filing for bankruptcy protection. However, when a debtor files under Chapter 13, the bankruptcy estate includes property and wages gained after commencement of bankruptcy proceedings. Under this statutory scheme, the exception in 11 U.S.C. § 362(b)(2) has little or no practical effect in Chapter 13 situations. *See* Henry J. Sommer & Margaret D. McGarity, *Collier Family Law and the Bankruptcy Code* ¶ 5.03[3][a][ii] at 5–36 (Lawrence P. King ed. 1991) (hereinafter *Collier Family Law*).

■ In the case at bar, Mr. Carver filed for bankruptcy protection under Chapter 13. Thus, little if any property existed from which Paulette Carver could seek collection of the arrearages in the mortgage while the automatic stay was in effect.[7] Even assuming that Mr. Carver had some property that was not property of the estate, however, appellants specifically sought collection of the arrearages from his wages, which were part of the estate because he filed under Chapter 13. The contempt action filed in Family Court in South Carolina by appellants, therefore, did come under the automatic stay provisions of section 362(a), and was not covered by the exception of section 362(b)(2).

■ In such a situation, the proper course of action for appellants was to file

---

**6.** In bankruptcy situations, the federal district court usually acts through the bankruptcy court pursuant to 28 U.S.C. § 157.

**7.** Mr. Carver argues that these mortgage payments were part of an equitable division of the marital property and not support because he retains his equity in the marital home. We disagree. Mr. Carver is only required to make the mortgage payments until his youngest child reaches 18, at which time the property is to be

sold and the proceeds divided between him and his ex-wife. Clearly the purpose of the payments is to provide his ex-wife and children with a roof over their heads until the children all reach their majority. Under South Carolina law, a party may be required to make mortgage payments on the marital home in sole possession of the other spouse as an incident of support. *Whitfield v. Hanks*, 278 S.C. 165, 293 S.E.2d 314, 315 (1982).

for relief from the stay under 11 U.S.C. § 362(d):

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>> (A) the debtor does not have an equity in such property; and
>>
>> (B) such property is not necessary to an effective reorganization.

When requested, such relief should be liberally granted in situations involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters best left to state court. *See In re White*, 851 F.2d 170, 173 (6th Cir. 1988); *In re MacDonald*, 755 F.2d 715 (9th Cir.1985). Moreover, "it would result in great injustice to require children to await a bankruptcy court's confirmation of a debtor's Chapter 13 plan before permitting them to enforce their state court-determined right to collect past due support payments." *Caswell v. Lang*, 757 F.2d 608, 610 (4th Cir.1985) (holding that child support arrearages may not be included in a Chapter 13 plan). Such considerations clearly constitute "cause" for which relief from stay may be granted under § 362(d)(1).

### B. Abstention

However, finding that the proper course of action for appellants in this case would have been to request relief from the stay before proceeding with the contempt action in state court does not fully resolve the issue before this court—what remedy is appropriate for failure to request relief from stay before proceeding in state court to attempt collection of arrearages in alimony, maintenance, or support.

 The Bankruptcy Code provides that "[a]n individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). Further, as the automatic stay is essentially a court-ordered injunction, any person or entity who violates the stay may be found in contempt of court. *See Collier Family Law* ¶ 5.05[2]. Therefore, debtors may generally recover damages for violations of the automatic stay. *See id.*

However, alimony, maintenance, or support are not standard debtor/creditor situations, but involve important issues of family law. Traditionally, the federal courts have been wary of becoming embroiled in family law matters. For that reason, federal courts generally abstain from deciding diversity "cases involving divorce and alimony, child custody, visitations rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification." *Ingram v. Hayes*, 866 F.2d 368, 369 (11th Cir.1988); *see also Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir.1978).[8] *See generally Simms v. Simms*, 175 U.S. 162, 20 S.Ct. 58, 44 L.Ed. 115 (1899) (the subject of domestic relations belongs to state, not federal law). "The reasons for federal abstention in these cases are apparent: the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts." *Crouch*, 566 F.2d at 487.

Although to this point the domestic relations exception has been applied only to diversity jurisdiction or federal question jurisdiction which would require adjudication of domestic affairs, *see Ingram*, 866 F.2d at 369–72, the concerns underlying this abstention doctrine are also present in bankruptcy. The state interest in ensuring that dependents are adequately provided

---

**8.** Decisions of the former Fifth Circuit handed down before October 1, 1981 are binding prece-

dent in this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

for is certainly strong. Decisions which involve alimony or child support, generally under continuing supervision by the state courts, could require the bankruptcy court to second guess the state court on such matters and could produce conflicting court decrees further aggravating an already delicate situation. Nor was it "the 'intent of the new Bankruptcy Code to convert the bankruptcy courts into family or domestic relations courts—courts that would in turn, willy-nilly, modify divorce decrees of state courts insofar as these courts had previously fixed the amount of alimony and child support obligations of debtors.'" *Caswell,* 757 F.2d at 610–11 (quoting *In re Garrison,* 5 B.R. 256, 260 (Bankr.E.D.Mich. 1980)). "It is appropriate for bankruptcy courts to avoid incursions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'" *In re MacDonald,* 755 F.2d at 717–19 (quoting *In re Graham,* 14 B.R. 246, 248 (Bankr. W.D.Ky.1981)).

Indeed, Congress has implicitly recognized the importance of such obligations because neither alimony, maintenance, nor support obligations are dischargeable in bankruptcy. 11 U.S.C. § 523(a)(5).[9] This court has held that a determination of what domestic obligations are dischargeable may not include a determination of whether the recipient spouse needed the arrearages, because "assessment of the ongoing financial circumstances of the parties to a marital dispute would of necessity embroil federal courts in domestic relations matters which should properly be reserved to the state courts." *In re Harrell,* 754 F.2d 902, 907 (11th Cir.1985). Lastly, there is a danger that bankruptcy will be used as a weapon in an on-going battle between former spouses over the issues of alimony and child support or as a shield to avoid family obligations. It is important that "[t]he bankruptcy code ... not be used to deprive dependents, even if only temporarily, of the necessities of life." *Caswell,* 757 F.2d at 610.

It is precisely this type of situation, where determination of an issue otherwise within the jurisdiction of the bankruptcy court would entangle the court in matters primarily of state concern, that Congress addressed in the statute outlining the bankruptcy jurisdiction of the federal courts. 28 U.S.C. § 1334(c)(1) provides: "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."[10] The court may abstain upon request of a party or *sua sponte.* "The abstention provisions of the [Bankruptcy Code] demonstrate the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." *In re Wood,* 825 F.2d 90, 93 (5th Cir.1987) (footnote omitted).

■ In our opinion, bankruptcy and district courts should tread very carefully when asked to impose sanctions for violation of the automatic stay where the actions underlying the violation involve alimony, maintenance, or support. In each case, the court should carefully sift through the facts, keeping in mind the purposes of the automatic stay provision as well as concerns of justice, comity, and judicial economy that support abstention in domestic relations cases. *Cf. Kirby v. Mellenger,* 830

9. This includes domestic obligations that are actually in the nature of alimony, maintenance, or support. *See* 11 U.S.C. § 523(a)(5).

10. There are two other abstention provisions in the Bankruptcy Code. 28 U.S.C. § 1334(c)(2) provides for mandatory abstention upon motion of a party in a related proceeding based on a state law claim, not one arising under title 11, where the claim could not have been brought in

federal court absent bankruptcy jurisdiction and an action on the claim has been filed and can be timely adjudicated in the appropriate state court. Also, 11 U.S.C. § 305 permits the Bankruptcy Court to abstain from hearing the entire bankruptcy case if it is in the interests of both the debtor and the creditors or if a foreign proceeding is involved.

F.2d 176, 178 (11th Cir.1987) (diversity exception). Where the purposes of the automatic stay provision would clearly be served by affording a remedy for its violation, and the court would not be required to delve too deeply into family law, the court need not abstain from hearing the claim.

■ In the case at bar, we find that the court should have abstained. First, the purposes underlying the automatic stay provision would not be served by such a damage award. Mr. Carver's other creditors were not harmed by the actions of appellants because under the Chapter 13 plan filed by Mr. Carver, the arrearages were to be paid in full from property of the estate. Moreover, although Mr. Carver ultimately paid the required amount to obtain his release from jail, those funds were borrowed from his new father-in-law, and did not come from property of the estate.

Further, although Mr. Carver was subjected to a suit while seeking bankruptcy protection, and was even jailed, much of this situation was of his own making. This was not the first time Mr. Carver was not current on his mortgage obligation. Once before, Paulette Carver sought to have him held in contempt in order to force him to pay the arrearages. The Family Court was lenient that time, and merely ordered him to bring the mortgage current. Mr. Carver was clearly jailed as much for his repeated disregard for the orders of the Family Court as for the purpose of obtaining the arrearages. Transcript of Trial, Bankr. S.D.Ga., R.Exh. at 36 (testimony of Hon. Peter R. Nuessle, Judge of the Family Court, Second Judicial Circuit of South Carolina). Under such circumstances, the interests of comity weigh heavily in favor of abstention.

Moreover, it is clear that the Bankruptcy Court in this case was being used as a weapon in the on-going dispute between Edward and Paulette Carver. When Mr. Carver filed for bankruptcy protection, neither his ex-wife nor her attorney were notified; Mr. Pearce learned of the filing purely by accident. Because Mr. Pearce was not notified and was not able, despite repeated efforts, to obtain from Mr. Carver's attorney a copy of the Chapter 13 plan filed in another state, appellants did not know at the time of the contempt hearing whether the arrearages were covered by the plan. When the court gave Mr. Carver ample opportunity to explain his side of the situation, Mr. Carver did not raise the fact of his pending bankruptcy petition, nor did he inform the court that his Chapter 13 plan covered the arrearages. To the contrary, he stated that he was attempting to borrow the money to cover the arrearages.[11] Nor apparently was any motion raising the issue of his pending bankruptcy petition filed on his behalf during the seven and one-half days he spent in jail. Nevertheless, after paying the required $8,792.48 and being released from jail, Mr. Carver, through his bankruptcy attorney, filed a motion for damages for willful violation of the automatic stay. The outcome of that motion was that appellants were fined over $18,-000, substantially more than Mr. Carver was required by the Family Court to pay in arrearages and fees and likely a significant burden on Mr. Carver's dependents. We find that result to be inappropriate and hold that under these circumstances the bankruptcy court should have abstained from consideration of Mr. Carver's claim for damages for violation of the automatic stay.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED and the

11. Mr. Carver appeared in Family Court in South Carolina for the contempt hearing without an attorney. No explanation has been offered for why he was not represented; he apparently was represented in his divorce proceedings and in his bankruptcy petition. Although he did request a continuance to seek counsel, that request was not made until near the end of the hearing, after Mr. Carver had testified under oath.

order of the bankruptcy court is VACAT-
ED.