**In re Jimmy A. FULLWOOD, Debtor.**

**Bankruptcy No. 94–40946–JDW.**

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

Aug. 22, 1994.

R. Wade Gastin, Savannah, GA, for debtor.

Hugh T. Hunter, Sylvania, GA, for movant.

Sylvia Ford Brown, Chapter 13 Trustee, Savannah, GA.

### MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

A motion for stay relief was filed by Cynthia Edwards Fullwood ("Movant") against the debtor, Jimmy Alvin Fullwood, Sr. ("Debtor"). The motion seeks authority to allow Movant to pursue Debtor in a state court contempt action arising out of a domestic relations judgment. After considering evidence presented at a hearing on July 15, 1994, and arguments of counsel, the Court determines that the motion should be denied. These findings of fact and conclusions of law are published in compliance with Fed. R.Bankr.P. 7052.

### FINDINGS OF FACT

Movant and Debtor were divorced pursuant to a judgment of the Superior Court of Effingham County, Georgia, dated January

14, 1994, and filed January 18, 1994. That order is referred to here as the "final decree." The judgment provides as follows:

1. Certain property of the parties is divided as equitable division.

2. Debtor is required to pay child support in the amount of Fifty Dollars ($50.00) per week, per child, for a total weekly child support payment of One Hundred Dollars ($100.00).

3. Debtor is required to pay attorney's fees in the amount of Two Thousand Dollars ($2,000.00).

The Superior Court of Effingham County, Georgia had previously issued an order entitled Order on Contempt Motion and Motion to Modify Temporary Order dated August 26, 1993. That order was filed on August 31, 1993 and is referred to here as the "temporary order." That order makes reference to a previous order requiring Debtor to make child support payments on a temporary basis.

Debtor has paid Twenty-five Dollars ($25.00) towards the Two Thousand Dollar ($2,000.00) attorney fee obligation. Debtor owes Five Hundred Dollars ($500.00) in child support. Of that Five Hundred Dollar ($500.00) sum, Three Hundred Dollars ($300.00) is owing pursuant to the final decree and Two Hundred Dollars ($200.00) is owing pursuant to the temporary order. These are prepetition liabilities.

At the time of the hearing there was no arrearage for post-petition child support. Debtor had admitted a liability of One Hundred Dollars ($100.00) which was paid by a check tendered at the hearing. Movant contended that the current week's payment of One Hundred Dollars ($100.00) was owing. Debtor's undisputed testimony was that the payment was customarily made on Saturday mornings when Debtor appeared at Movant's residence to exercise his child visitation rights. Since the hearing was held on a Friday, the current week's child support payment would not have come due until the day following the hearing.

Debtor has listed Cynthia E. Fullwood, Movant and former wife of Debtor, as holding an unsecured non-priority claim in the amount of Four Hundred Dollars ($400.00) for "child support." Also listed is Hugh T. Hunter, attorney for Movant in this Court, in the amount of One Thousand Eight Hundred Seventy-five Dollars ($1,875.00) for "attorney's fees." Mr. Hunter represented Movant in the domestic relations action in state court. There is a discrepancy between the amounts listed in the schedules and the amounts which are found to be owing based on the evidence presented at the hearing.

Debtor's plan proposes to pay Eighty-five Dollars ($85.00) monthly to the Chapter 13 trustee. The plan provides for unsecured creditors to be paid Ten Percent (10%) of their claims. The plan is silent as to the treatment of claims of Movant and her attorney. Evidence presented at the hearing shows that Debtor intends to amend the plan and pay Movant's claims in full in the Chapter 13 case.

## CONCLUSIONS OF LAW

The question presented is whether Movant's request for stay relief should be granted so as to permit Movant to pursue her prepetition domestic relations claims for child support and attorney's fees in the state court or whether, instead, the motion for stay relief should be denied based upon Debtor's assertion that Movant's claims will be paid in full through the Chapter 13 case.

The request for stay relief is brought by Movant in reliance on *Carver v. Carver,* 954 F.2d 1573 (11th Cir.1992). Movant urges that the Eleventh Circuit has instructed bankruptcy courts to liberally grant requests for stay relief filed by movants who want to pursue domestic relations claims against debtors in state courts. In this case, Movant's claim consists entirely of liquidated support obligations of Debtor incurred pre-petition.

In the *Carver* opinion, the Eleventh Circuit Court of Appeals applied the so called "domestic relations exception" to federal jurisdiction in stating that a bankruptcy court should have abstained from hearing an action brought by a debtor against his former wife and her counsel for violation of the automatic stay of 11 U.S.C. § 362(a). The court found that the defendants had indeed violated the

automatic stay, and that they should have sought relief from the automatic stay before proceeding in the state court. However, the court reversed the bankruptcy court's imposition of sanctions on the defendants. In doing so, the court acknowledged that "federal courts generally abstain from deciding diversity 'cases involving divorce and alimony, child custody, visitation rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court modification.'" *Id.* at 1578, citing *Ingram v. Hayes,* 866 F.2d 368, 369 (11th Cir.1988); *Crouch v. Crouch,* 566 F.2d 486, 487 (5th Cir.1978); *Simms v. Simms,* 175 U.S. 162, 20 S.Ct. 58, 44 L.Ed. 115 (1899). The court went on to state that "[w]hen requested, such relief [from the automatic stay] should be liberally granted in situations involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters best left to state court." *Id.* at 1578. The oft-cited language of the *Carver* decision states:

> In our opinion, bankruptcy and district courts should tread very carefully when asked to impose sanctions for violation of the automatic stay where the actions underlying the violation involve alimony, maintenance, or support. In each case, the court should carefully sift through the facts, keeping in mind the purposes of the automatic stay provision as well as concerns of justice, comity, and judicial economy that support abstention in domestic relations cases. [citation omitted]. Where the purposes of the automatic stay provision would clearly be served by affording a remedy for its violation, and the court would not be required to delve too deeply into family law, the court need not abstain from hearing the claim.

*Carver* at 1579–1580.

Therefore, two general rules appear to have emerged from the *Carver* decision: 1) Relief from stay should be liberally granted in actions involving family law matters; and 2) Federal courts should abstain from hearing such matters unless the court can avoid delving too deeply into family law.

The *Carver* opinion was based largely upon the cases of *Simms v. Simms,* 175 U.S. 162,

20 S.Ct. 58, 44 L.Ed. 115 (1899), *Ingram v. Hayes,* 866 F.2d 368 (11th Cir.1988), and *Crouch v. Crouch,* 566 F.2d 486 (5th Cir. 1978). In *Simms* the United States Supreme Court was faced with an appeal from a territorial court's order granting a divorce and establishing alimony payments. The issue was "the continuance or the dissolution of the status or relation of marriage between the parties". *Id.* 175 U.S. at 168, 20 S.Ct. at 60. The Court cited the case of *Barber v. Barber,* 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1858) for the proposition that:

> "It may ... be assumed as indubitable that the circuit courts of the United States have no jurisdiction, either of suits for divorce, or of claims for alimony, whether made in a suit for divorce, or by an original proceeding in equity, before a decree for such alimony in a state court. Within the states of the Union, the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the state, and not to the laws of the United States."

*Simms,* 175 U.S. at 167, 20 S.Ct. at 60.

In the *Ingram* case, the Eleventh Circuit Court of Appeals addressed the issue of a litigant in federal court seeking modification of a child support decree entered by a state court. The circuit court upheld the district court's denial of subject matter jurisdiction. In doing so, the court acknowledged the domestic relations exception, and yet concluded that the exception does not justify abstention in all matters involving family law. *Ingram* at 369–370. The court stated that:

> Federal courts should not abstain when the following policies favoring federal abstention are absent: 'the strong state interest in domestic relations matters, the competency of state courts in settling family disputes, the possibility of incompatible federal and state decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts.' [citation omitted]. Consequently, federal courts should dismiss the action only if hearing the claim would man-

date inquiry into the marital or parent-child relationship. [citation omitted].

*Id.* at 370.

In the *Crouch* decision, the Fifth Circuit Court of Appeals[1] held that the domestic relations exception did not apply in a suit over a contract to pay money arising out of the parties' divorce. In finding that the exception did not apply, the court noted:

> We are faced here with no questions of custody or parental rights, no pending state court action or agreement to litigate in state court, and no threat that the former spouses will seek to play one court system off against the other. [citation omitted]. Nor do we perceive any strong state interest in the adjudication of this suit or any special competence on the part of state courts, other than their superior ability to interpret state law, which is always present in diversity suits. Because none of the rationales for the domestic relations exception obtain in this case with the possible exception of congested federal dockets we uphold the district court's exercise of jurisdiction and proceed to determine the merits.

*Id.* at 487–488.

The express language of the opinions relied upon by the Eleventh Circuit in *Carver* acknowledge that the domestic relations exception is not all encompassing. Exceptions exist when the court is not asked to inquire into the "marital or parent-child relationship." *Ingram* at 370. The *Carver* opinion noted this fact when it stated that bankruptcy courts need not abstain when the resolution of the issue does not involve delving too deeply into family law. *Carver* at 1580. Therefore, although the *Carver* court's interpretation of the domestic relations exception is very broad, important exceptions remain.

After *Carver* was decided, the United States Supreme Court elaborated upon, and sharply limited, the domestic relations exception to federal jurisdiction. In *Ankenbrandt v. Richards,* —— U.S. ——, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) the Court stated that

"the domestic relations exception, as articulated by this Court since *Barber,* divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Id.* —— U.S. at ——, 112 S.Ct. at 2215. The Court, therefore, limited the domestic relations exception to the *issuance* of a divorce, alimony, or child custody decree. Having thus limited the exception, the Court went on to apply general considerations applicable to abstention. The Court stated "It is axiomatic ... that '[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.' [citation omitted]. Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.'" *Id.* —— U.S. at ——, 112 S.Ct. at 2215. [citation omitted].

Inasmuch as the *Carver* decision rests upon the broad language contained in *Simms* to the effect that the entire subject of family law is reserved to the states, the *Ankenbrandt* decision has limited, if not overruled, *Simms.* Subsequent authority relying upon the overly broad interpretation of *Barber* and the domestic relations exception must also be viewed in light of *Ankenbrandt. See Lawson v. Lackey (In re Lackey),* 148 B.R. 626, 630 (Bankr.N.D.Ala.1992) ("Because *Carver* hinges upon the finding that domestic relations law is a special category and an exception to federal jurisdiction, it has been effectively overruled or substantially limited by *Ankenbrandt....*").[2] It appears now that the domestic relations exception to federal jurisdiction in the wake of *Ankenbrandt* is confined to the issuance or modification of divorce, alimony, or child custody decrees.

The matter before this Court concerns an arrearage in Debtor's child support payments. At the time of the hearing on this matter Debtor was current on post-petition child support payments. Movant seeks to have Debtor held in contempt in state court for nonpayment of pre-petition child support obligations. Movant is scheduled as a creditor in Debtor's plan, and Debtor proposes to

---

**1.** Decisions of the Fifth Circuit Court of Appeals decided prior to October 1, 1981, are binding on courts of the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

**2.** *Contra Rogers v. Overstreet (Matter of Rogers),* 164 B.R. 382 (Bankr.N.D.Ga.1994).

pay 100% of Movant's claim over the course of the Chapter 13 plan.[3]

The Court finds that the instant case is distinguishable from *Carver*, and therefore declines to grant Movant's request to lift the automatic stay. *C.f. Brown v. Davis (In re Davis)*, 172 B.R. 696 (Bankr.S.D.Ga.1993) (order overruling objection to confirmation) (the court would not be called upon to delve too deeply into family law to rule on a debtor's good faith in filing her petition). The issue before this Court does not mandate that the Court delve too deeply into family law in order to resolve the conflict. *Carver*. By refusing to lift the automatic stay, this Court is not committing itself to inquire into the "marital or parent-child relationship." *Ingram* at 370. Neither is this Court embarking upon a course of action designed to issue or otherwise modify a divorce, alimony, or child support order of a state court. *Ankenbrandt*.

The debt at issue here is an acknowledged prepetition default in child support payments. Such debt is plainly nondischargeable. 11 U.S.C. § 1328(a)(2). However, such debt may be included in Debtor's Chapter 13 plan. *James v. Moore (Matter of James)*, 150 B.R. 479, 485 (Bankr.M.D.Ga. 1993) ("A debtor in a Chapter 13 case must be able to deal with the arrearages on support obligations that are nondischargeable. It would be virtually impossible to propose a successful Chapter 13 plan that does not provide for payment in full of such obligations." [citation omitted] ). The Court finds that the issues raised in this matter invoke the Court's "virtually unflagging obligation" to exercise the jurisdiction conferred upon it by Congress. *Ankenbrandt* —— U.S. at ——, 112 S.Ct. at 2215. Neither abstention nor relief from stay appear to be appropriate at this time.

Debtor will be allowed twenty (20) days to amend his Chapter 13 plan to provide for the payment in full of Movant's claim. A further hearing on the motion will be reconvened at the same day and time as the hearing on confirmation of the Debtor's plan.

An order in accordance with this memorandum opinion will be entered this date.

### ORDER

A motion for stay relief was filed by Cynthia Edwards Fullwood, former wife of Debtor, Jimmy Alvin Fullwood, Sr. In accordance with the memorandum opinion entered in this case pursuant to Fed.R.Bankr.P. 7052, it is hereby

ORDERED that Debtor is allowed twenty (20) days from the date of the entry of this order to amend his Chapter 13 plan to provide for the payment in full of Movant's claims; and it is hereby further

ORDERED that the stay relief motion shall be reconsidered at the same day and time as the hearing on the confirmation of Debtor's Chapter 13 Plan; and it is hereby further .

ORDERED that the automatic stay shall continue in full force and effect until further order of the Court.

SO ORDERED.

---

**3.** Debtor disputes a Two Hundred Dollar ($200.00) portion of the Five Hundred Dollar ($500.00) pre-petition obligation which had been incurred prior to the entry of the final decree. Debtor argues that any obligations incurred pursuant to a temporary order would have to be restated in the final decree. The final decree is silent as to the restatement of any Two Hundred Dollar ($200.00) obligation in the final decree. This issue is not relevant to the question before the Court. This question will have to be decided under state law. The determination as to the effect of a final order on an interlocutory order is not necessarily a family law or domestic relations issue. If Movant's request for stay relief is denied, Debtor can file an objection to Movant's claim and have that objection resolved like any other claim objection. For the purpose of the Court's consideration of Movant's request for stay relief, it is only important to conclude that there is a liquidated prepetition domestic relations support obligation in an amount which may be finally determined in this Court if the stay relief request is denied.