**In re Stephen E. COLE, d/b/a Cole
Animal Clinic, Debtor.**

**Bankruptcy No. 96 B 44128 (SMB).**

United States Bankruptcy Court,
S.D. New York.

Nov. 1, 1996.

Pryor Cashman Sherman & Flynn (Angela Tese–Milner, of counsel), New York City, for Deborah Cole.

Wotman & Associates, LLC (Daniel R. Wotman, of counsel), New York City, for Debtor.

## MEMORANDUM DECISION GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY

STUART M. BERNSTEIN, Bankruptcy Judge.

Deborah Cole (the "Movant") seeks relief from the automatic stay—to the extent necessary—to continue her state court divorce and equitable distribution proceeding against the debtor and to collect prepetition and postpetition unpaid maintenance and child support (collectively "support") from the debtor's exempt and non-estate property. Subject to the limitations discussed below regarding equitable distribution, the Court grants the motion.

### FACTS

The debtor, a veterinarian, filed this chapter 11 case on August 2, 1996. At the time, he and Movant were parties to a divorce action. They have two children, ages 12 and 6. The debtor grosses approximately $400,000.00 annually from his veterinary practice. The Movant, a singer with the Metropolitan Opera, earns less than $15,000.00 annually. Throughout most of the marriage, the Movant has been a homemaker.

On the filing date, the debtor was obligated, under a *pendente lite* award issued by the state court, to pay the Movant, on a monthly basis, $2,050.00 for child support, $3,000.00 for maintenance, and up to $500.00 for child care costs. The debtor failed to pay the court-ordered support, and as of August 1, 1996, owed arrears in excess of $12,000.00.

Following the commencement of this case, the Movant made the present motion. She contends that she is entitled to collect unpaid support from non-estate and exempt property under 11 U.S.C. § 362(b)(2)(B).[1] Further,

---

1. Section 362(b)(2)(B) provides that the automatic stay under section 362(a) does not extend to

the Court should grant relief from the stay because of the matrimonial nature of the proceeding and her inability to go back and obtain equitable distribution once the state court renders a divorce decree. The debtor concedes the nondischargeability of the support claims, and opposes the motion on other grounds. First, he maintains that the exception to the automatic stay in section 362(b)(2)(B) does not apply to the collection of prepetition support, and the Movant (and their children) must await payment under a plan.[2] Second, he says that he lacks the money to comply with the state court's *pendente lite* order. Third, he insists that stay relief will interfere with the administration of the case, and that the bankruptcy court should decide the equitable distribution issues.

On the return date of the motion, September 24, 1996, the Court disposed of several of these issues. To the extent necessary, the Court granted relief from the automatic stay to allow the Movant to collect postpetition support from the debtor's non-estate and exempt property, and to sequester certain pension funds, which the debtor listed as exempt property, in aid of her collection activities. If the debtor amended his schedules and withdrew his claimed exemption in the pension funds (as he stated he might do), he was directed to escrow the funds and not disburse them except upon further order of the Court. Finally, the debtor was granted relief to seek a modification of the *pendente lite* support award in the state court, although it seems he could do so notwithstanding the automatic stay. *See* 11 U.S.C. § 362(b)(2)(A)(ii).

■ The Court reserved decision and directed the parties to submit additional memoranda on two issues: (1) whether 11 U.S.C. § 362(b)(2)(B) applies to prepetition support, and (2) whether permitting the state court to determine the equitable distribution issues would unduly impinge on the Bankruptcy Court's jurisdiction to decide issues involving property of the estate. The Movant submitted an additional memorandum [3]; the debtor did not.

## DISCUSSION

### A. Prepetition Support

■ Section 362(b)(2)(B) strikes a balance between the debtor's fresh start, and his obligations to his family and his creditors. The automatic stay protects the debtor's discharge, but support is not dischargeable.[4] Moreover, subjecting the debtor's non-estate property to support claims meets the needs of the non-debtor spouse without sacrificing the interests of the other creditors. *See* H.R.Rep. No. 95–595, at 342–43 (1977); S.Rep. No. 95–989, at 51 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787. Although the debtor draws a distinction between prepetition and postpetition support for purposes of section 362(b)(2)(B), neither its language nor its purpose supports it. Both are nondischargeable, and the non-debtor spouse and the children suffer when either goes unpaid. In addition, collection of either from non-estate property does not interfere with the interests of the other creditors. Accordingly, section 362(b)(2)(B) covers both prepetition and postpetition, nondischargeable support.

■ This conclusion also seems to apply— although with less certainty—to the debtor's exempt property. Section 362(b)(2)(B) speaks solely of non-estate property, but the

---

"the collection of alimony, maintenance, or support from property that is not property of the estate." This tracks similar language in 11 U.S.C. § 523(a)(5) which makes claims for alimony, maintenance and support nondischargeable.

**2.** Further muddying the waters, the debtor says that the prepetition support, although based upon a court order, is disputed, and the Movant has "no standing" to collect the disputed sums until the claim is allowed under section 502. He does not cite any supporting authority.

**3.** The Movant raised the issue of mandatory abstention, for the first time, in her supplemental papers. Since she did not make a "timely motion," 28 U.S.C. § 1334(c)(2), the Court will not reach this belated argument.

**4.** The discharge under 11 U.S.C. § 727(b) does not encompass postpetition debts, and section 523(a)(5) renders prepetition support nondischargeable.

legislative history specifically states that it also covers exempt property. H.R.Rep. No. 95–595, at 342 (1977); S.Rep. No. 95–989, at 51 (1978). Moreover, neither party has distinguished between the two. Yet "non-estate" and "exempt" property are not interchangeable. Section 541(b), which identifies property that is excluded from "property of the estate," does not mention exempt property. Moreover, exempt property—unlike non-estate property—remains liable for certain claims against the estate. *See* 11 U.S.C. §§ 522(c), 522(k). Nevertheless, reading section 362(b)(2)(B) to include exempt property advances its purpose, and on that basis, the statute should cover it although it does not expressly mention it.

■ Even if the statutory exception is limited to non-estate property, the Movant is entitled to relief from the automatic stay to collect support arrearage from the debtor's exempt property. Section 522(c)(1) makes exempt property subject to the payment of nondischargeable support claims. Thus, Congress carved out this category of property for the express benefit of people like the Movant and her children. In addition, the collection activities will not prejudice creditors or interfere with the administration of the estate; by asserting the exemptions that he could have waived, the debtor opted to withdraw these assets from the payment of his other debts.

■ Finally, allowing the Movant to proceed eases the hardship resulting from the debtor's default. The payment of support, already overdue, should not await the confirmation of a plan. *Carver v. Carver*, 954 F.2d 1573, 1578 (11th Cir.), *cert. denied*, 506 U.S. 986, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992); *Caswell v. Lang*, 757 F.2d 608, 610 (4th Cir. 1985). The two chapter 13 cases that the debtor cites for the contrary proposition—*In*

*re Fullwood*, 171 B.R. 424 (Bankr.S.D.Ga. 1994) and *In re Lanham*, 13 B.R. 45 (Bankr. C.D.Ill.1981)—are inapposite. Neither supports a rule that a non-debtor spouse must always await distribution under a plan even where the debtor has exempt assets with which to pay nondischargeable support. In *Lanham*, the court refused to grant relief from the stay because the debtor had "little or no non-estate property against which to proceed," 13 B.R. at 46, and the plan provided for the full payment of the arrearage in a reasonable time. *Id.* at 47. In *Fullwood*, the court denied stay relief to prosecute a state court contempt motion against the debtor for non-payment of prepetition support. The debtor was current postpetition, and had proposed to pay 100% of the arrearage under his plan. 171 B.R. at 427–28. Here, the debtor apparently has substantial exempt property, was in default for both prepetition and postpetition support, and has not proposed a plan.[5]

## B. Equitable Distribution

### 1. Introduction

In New York, matrimonial courts have long been empowered, in connection with divorce actions, to determine the issues of title to property and to make directions pertaining to the possession of property. N.Y.Dom.Rel.Law ("DRL") § 234 (1986). Further, in July 1980, New York enacted an equitable distribution law. DRL § 236. Equitable distribution creates a classification of property known as "marital property." Marital property refers to "all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, *regardless of the form in which title is held.*" DRL § 236, Part B, subd. 1(c) (emphasis added).

---

**5.** The nature of chapter 13 also provides greater assurance that the non-debtor spouse will receive the prepetition arrearage expeditiously. Under chapter 13, the debtor must file his plan no later than fifteen days after the petition date, Fed. R.Bankr.P. 3015(b), and unless the court orders otherwise, commence making his plan payments (to the trustee) thirty days after he files the plan. 11 U.S.C. § 1326(a)(1). The trustee must distribute payments to the creditors "as soon as practi-

cable" following confirmation. 11 U.S.C. § 1326(a)(2). In contrast, chapter 11 does not impose any time limit on the filing of the plan, and does not require the debtor to deposit any plan payments after filing the case or the plan. *Cf.* Fed.R.Bankr.P. 3020(a) (prior to entry of chapter 11 confirmation order, court may order deposit of consideration required by the plan to be distributed at confirmation).

Under equitable distribution, the matrimonial court can direct the distribution of marital property between the spouses in the final divorce judgment. DRL § 236, Part B, subd. 5(a). The distribution must take account of "the circumstances of the case and of the respective parties," DRL § 236, Part B, subd. 5(c), and the statute lists thirteen factors that the court must consider. *See* DRL § 236, Part B, subd. 5(d). Alternatively, the court may make a distributive award where equitable distribution is impractical or burdensome, or where the distribution of an interest in a business, corporation or profession would be contrary to law. The court may also make a distributive award to supplement, facilitate or effectuate the distribution of marital property. DRL § 236, Part B, subd. 5(e); *see Majauskas v. Majauskas*, 61 N.Y.2d 481, 493, 463 N.E.2d 15, 22, 474 N.Y.S.2d 699, 706 (1984); *McDicken v. McDicken*, 109 A.D.2d 734, 735, 486 N.Y.S.2d 52, 53 (2d Dep't 1985).

 If the equitable distribution law creates statutory rights in marital property, the bankruptcy court must honor them. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law."). The spouses' respective rights in marital property do not vest under New York law, however, until entry of a judgment dissolving the marriage. *Cooper v. Frederes (In re Frederes)*, 141 B.R. 289, 291–92 (Bankr.W.D.N.Y.1992); *In re Greenwald*, 134 B.R. 729, 731 (Bankr.S.D.N.Y.1991); *Leibowits v. Leibowits*, 93 A.D.2d 535, 549, 462 N.Y.S.2d 469, 478 (2d Dept.1983) (O'Connor, J., concurring); *see In re Palmer*, 78 B.R. 402, 406 (Bankr.E.D.N.Y.1987); *cf. Cappiello v. Cappiello*, 110 A.D.2d 608, 609, 488 N.Y.S.2d 399, 401 (1st Dep't) (marriage, standing alone, does not vest property rights in the assets of the estate of either spouse), *aff'd*, 66 N.Y.2d 107, 485 N.E.2d 983, 495 N.Y.S.2d 318 (1985). If bankruptcy intervenes before the state court enters the judgment, the trustee's status as hypothetical lien

creditor cuts off the non-debtor spouse's inchoate rights in marital property, *In re Becker*, 136 B.R. 113, 118 (Bankr.D.N.J.1992), and leaves her with a general unsecured claim. *Goldberg v. Hilsen (In re Hilsen)*, 100 B.R. 708, 711 (Bankr.S.D.N.Y.1989), *rev'd on other grounds*, 119 B.R. 435 (S.D.N.Y.1990); *In re Palmer*, 78 B.R. at 406; *see In re Greenwald*, 134 B.R. at 731.

 A proceeding that affects the status of the marriage—through divorce or other dissolution—does not implicate the automatic stay. *In re Becker*, 136 B.R. at 116. Equitable distribution proceedings, however, affect title to and possession of property of the estate, and do. *See Roberge v. Roberge (In re Roberge)*, 188 B.R. 366, 368 (E.D.Va. 1995), *aff'd*, 95 F.3d 42 (4th Cir.1996); *In re Wilson*, 85 B.R. 722, 724 (Bankr.E.D.Pa. 1988); *but cf. Hilsen v. Hilsen*, 161 A.D.2d 459, 555 N.Y.S.2d 370, 371 (1st Dep't) (equitable distribution is part of maintenance award and not subject to the automatic stay), *leave to appeal denied*, 76 N.Y.2d 714, 565 N.E.2d 1268, 564 N.Y.S.2d 717 (1990). Like any other creditor who desires to continue prepetition litigation to liquidate her unsecured claim, the spouse seeking equitable distribution must request relief from the automatic stay.

## 2. Relief from Stay

 This brings us to the nub of the Movant's motion. Under 11 U.S.C. § 362(d)(1), the bankruptcy court may modify the stay for "cause." Although the pending motion concerns a matrimonial action, the decision turns on traditional stay relief analysis. *See Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir.1992). Neither Section 362(d)(1) nor the legislative history defines "cause". *Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990). In *Sonnax*, however, the Court adopted twelve factors,[6] enunciated in *In re*

---

**6.** They are the following: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor

as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily

*Curtis,* 40 B.R. 795, 799–800 (Bankr.D.Utah 1984), that a court should weigh in determining whether to allow a creditor to continue litigation in another forum. The court should consider only those factors relevant to a particular case [7], *In re Sonnax Indus., Inc.,* 907 F.2d at 1286, and need not assign them equal weight. *In re Touloumis,* 170 B.R. 825, 828 (Bankr.S.D.N.Y.1994); *In re Anton,* 145 B.R. 767, 770 (Bankr.E.D.N.Y.1992). "When applying these factors and considering whether to modify the automatic stay, the Court should take into account the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate." *In re Keene Corp.,* 171 B.R. 180, 183 (Bankr.S.D.N.Y.1994).

Here, the Movant will suffer substantial prejudice if the Court denies her motion. She must seek equitable distribution as part of her action for divorce; the claim cannot stand on its own. *See Berman v. Berman,* 111 A.D.2d 141, 142, 489 N.Y.S.2d 519, 520 (1st Dep't 1985). Only the state court can grant a divorce decree. If this Court denies stay relief, she must either forego the divorce or surrender her claim for equitable distribution. This is an intolerable choice which she should not have to make.

■ The nature of the claim also militates in favor of stay relief. Federal courts, including bankruptcy courts, ordinarily defer to the state courts in matrimonial matters to promote judicial economy and out of respect for the state courts' expertise in domestic relations issues. *Robbins v. Robbins,* 964 F.2d at 344–45; *Mac Donald v. Mac Donald*

*(In re Mac Donald),* 755 F.2d 715, 717 (9th Cir.1985); *In re Newman,* 196 B.R. 700, 703 (Bankr.S.D.N.Y.1996); *see Carver v. Carver,* 954 F.2d at 1578–79; *In re Moon,* No. 201 B.R. 79, 82–83 (Bankr.S.D.N.Y.1996). New York's state courts are more familiar with the concepts of marital property and how to apply the statutory and discretionary factors that govern equitable distribution. Bankruptcy courts, on the other hand, rarely interpret or apply the equitable distribution statute.[8]

On the other hand, certain concerns counsel against stay relief. Sending the parties back to state court to litigate the issue of equitable distribution may interfere with the administration of the case, and prejudice the creditors of the estate. *In re Becker,* 136 B.R. at 119 (once bankruptcy ensues, the debtor's estate acquires rights which are inconsistent with equitable distribution law); *but cf. Levine v. Levine (In re Levine),* 107 B.R. 472, 475 (Bankr.S.D.N.Y.1989) (state court award of marital home to non-debtor spouse, following stay relief, did not adversely or significantly affect the creditors); *Kohn v. Hursa (In re Hursa),* 87 B.R. 313, 324 (Bankr.D.N.J.1988) (allowing state court to determine parties' rights in marital property does not interfere with the administration of the estate). Both matrimonial and bankruptcy courts deal under different statutes with issues involving the parties' rights in the debtor's property. The matrimonial court defines and distributes "marital property" in accordance with the equitable distribution law; the bankruptcy court defines and distributes "property of the estate" pursuant to

involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *In re Sonnax Indus., Inc.,* 907 F.2d at 1286.

7. Five of the *Sonnax* factors are irrelevant to this motion: the proceeding does not involve the debtor as a fiduciary, there are no insurers, there is no issue regarding equitable subordination, the

Movant's success will not result in an avoidable judicial lien, and neither party has offered evidence regarding their readiness for trial.

8. DRL, § 236, Part B, appears in Book 14 of McKinney's annotated statutes, the official New York compilation of the Domestic Relations Law. Book 14 was published in 1986, only six years after New York enacted equitable distribution. Yet the commentary to section 236, Part B, runs 122 pages, and the case digests span 200 pages. The current supplementary pamphlet covers the next ten years (1987–96). The commentary runs an additional 124 pages, and the case digests another 123 pages. One finds very few bankruptcy court decisions forming part of this substantial body of law and comment.

the Bankruptcy Code. *See In re Palmer,* 78 B.R. at 404–05.

Granting stay relief creates the possibility that the matrimonial court will distribute property of the estate to the non-debtor spouse, in satisfaction of her prepetition claim, without regard to the bankruptcy priority system or the rights of the other creditors. In addition, unlike bankruptcy, the debtor's creditors will probably not be able to participate in, or at least monitor, the claim liquidation process. This increases the possibility of a collusive award. *See Hohenberg v. Hohenberg (In re Hohenberg),* 143 B.R. 480, 488 (Bankr.W.D.Tenn.1992). Once embodied in a state court decree, it may become virtually unassailable in bankruptcy court:

> [W]e are not sure that [the bankruptcy court] can review or reject the state court's action in allocation of the marital estate once the stay is lifted. This, therefore, represents some abrogation of the bankruptcy court's authority, at least as far as its ability to determine the rights in marital property.

*White v. White (In re White),* 851 F.2d 170, 173 (6th Cir.1988); *cf. Beaver Street Assocs. v. Lady Liberty Tavern Corp. (In re Lady Liberty Tavern Corp.),* 94 B.R. 812, 813–14 (S.D.N.Y.1988) (preclusive effect must be given to state court judgment terminating debtor's lease).

These countervailing considerations do not, however, overcome the prejudice to the Movant and the other factors that favor stay relief. The bankruptcy court can limit stay relief to the liquidation of the amount of the Movant's unsecured claim, and require her to return to the bankruptcy court to enforce her judgment through the claims allowance process. *See e.g., Robbins v. Robbins,* 964 F.2d at 346; *Polliard v. Polliard (In re Polliard),* 152 B.R. 51, 54 (Bankr.W.D.Pa.1993); *cf. In re Hohenberg,* 143 B.R. at 488 (if the state court awards bankruptcy estate property, the non-debtor spouse may file a claim for its monetary value). This avoids the competition between two courts to divide the debtor's property according to different rules.

█ The bankruptcy court can also minimize the threat of collusive awards. It can require the parties to submit any settlements to the bankruptcy court for its approval. *In re Hohenberg,* 143 B.R. at 488. More important, the bankruptcy court can look behind a collusive judgment procured by fraud or other inappropriate means, and disallow the underlying claim, *see Pepper v. Litton,* 308 U.S. 295, 305–06, 60 S.Ct. 238, 244–45, 84 L.Ed. 281 (1939); *Margolis v. Nazareth Fair Grounds & Farmers Market, Inc.,* 249 F.2d 221, 223–24 (2d Cir.1957), or subordinate it. *See Pepper v. Litton,* 308 U.S. at 308, 60 S.Ct. at 246.

█ Finally, although the state court may exclude the creditors from participating, this is equally true whenever the bankruptcy court directs parties, through stay relief, abstention or remand, to continue their litigation in another court. Moreover, litigating the same issues in the bankruptcy court does not guarantee their participation. The creditors would not be parties to a bankruptcy adversary proceeding between the debtor and the Movant, and have no absolute right to intervene merely because they are creditors. *See Kowal v. Malkemus (In re Thompson),* 965 F.2d 1136, 1141 (1st Cir.1992); *995 Fifth Ave. Assocs., L.P. v. New York State Dep't of Taxation & Fin. (In re 995 Fifth Ave. Assocs., L.P.),* 157 B.R. 942, 951 (S.D.N.Y.1993).

## CONCLUSION

The Movant is entitled to relief from the automatic stay to collect prepetition and postpetition, nondischargeable support from the debtor's exempt and non-estate property. In addition, the Movant is entitled to relief from the automatic stay to continue the divorce action and litigate her claim to equitable distribution. The matrimonial court may, if it deems it appropriate under state law, render a distributive award, but may not distribute marital property or determine issues regarding title to property of the debtor or of the estate. The Court has considered the debtor's other arguments, and concludes that they lack merit.

Settle order on notice.