REL:11/26/2014

Notice: This opinion is subject to formal revision before publication in the advance
sheets of Southern Reporter. Readers are requested to notify the Reporter of Decisions,
Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-
0649), of any typographical or other errors, in order that corrections may be made before
the opinion is printed in Southern Reporter.

 SUPREME COURT OF ALABAMA
 OCTOBER TERM, 2014-2015
 ____________________

 1130480
 ____________________

 Paint Rock Turf, LLC

 v.

 First Jackson Bank et al.

 ____________________

 1130528
 ____________________

 First Jackson Bank

 v.

 Paint Rock Turf, LLC

 Appeals from Madison Circuit Court
 (CV-10-900076)
1130480, 1130528
MOORE, Chief Justice.

 Paint Rock Turf, LLC ("Paint Rock"), appeals from a

judgment as a matter of law ("JML") entered by the Madison

Circuit Court on its claim for emblements under § 35-9-2, Ala.

Code 1975, against First Jackson Bank ("First Jackson") and

Wayne A. Goodson and his wife Christian Goodson.1 First

Jackson cross-appeals from the trial court's denial of its

postjudgment motion for a JML on Paint Rock's claim alleging

conversion of pallets of sod.

 I. Facts and Procedural History

 On April 30, 2004, Paint Rock purchased a sod farm and

related farm equipment from Eufala Corporation. The sod farm

consisted of 1,171 acres of land upon which were grown 580

acres of Bermuda and Zoysia sod grasses. To partially finance

the purchase, Paint Rock borrowed $1,706,250 from First

 1
 Although Gerald T. Jones, Jr., whose father is the sole
member of Paint Rock, is designated as an appellant on the
notice of appeal and on Paint Rock's briefs, only Paint Rock
asserted an emblements claim in the trial court. Jones did not
appeal the jury verdicts on the claims he brought in the trial
court. Thus, none of his claims are before us on appeal.
Cherry Jones, Gerald's wife and a third-party plaintiff in the
trial court, has not appealed. Functionally, Paint Rock is the
only appellant in case no. 1130480, and we have restyled the
appeal to reflect that.
 2
1130480, 1130528
Jackson. The loan was secured by a mortgage on the sod farm

and a security interest in the equipment used on the farm.

 By February 2009, reflecting in part a drop in demand for

sod caused by the collapsing market for new homes, Paint Rock

had defaulted on the loan. On February 11, 2009, Paint Rock

filed a Chapter 11 bankruptcy petition in the United States

Bankruptcy Court for the Northern District of Alabama. The

filing of the petition operated as an automatic stay of "any

act to obtain possession of property of the estate or of

property from the estate or to exercise control over property

of the estate." 11 U.S.C. § 362(a)(3). The stay precluded

First Jackson from foreclosing on the sod farm or retaking the

equipment. The petition was dismissed August 12, 2009. On

October 30, 2009, First Jackson published in the Madison

County Record the first of three notices of a foreclosure sale

on the property scheduled for noon on November 19, 2009. On

the morning of November 19, 2009, Paint Rock filed a second

bankruptcy petition, which stayed the scheduled November 19

sale, and which was dismissed on December 8, 2009, for failure

to file the proper schedules and statements. On December 18,

2009, First Jackson published a notice that the foreclosure

 3
1130480, 1130528
sale was rescheduled for December 30, 2009. On December 26,

2009, Paint Rock filed its third bankruptcy petition. Four

days later, the bankruptcy court lifted the automatic stay,

expressly finding that Paint Rock had misused "the bankruptcy

process in an attempt to wrongfully hinder and delay [First

Jackson's] efforts to foreclose its mortgage and security

agreement." See Barclays-American Bus. Credit, Inc. v. Radio

WBHP, Inc. (In re Dixie Broad., Inc.), 871 F.2d 1023, 1026

(11th Cir. 1989) (noting that "a petition filed in bad faith

... justifies relief from a stay").

 The same day, December 30, 2009, immediately following

the lifting of the stay by the bankruptcy court, First

Jackson, as the high bidder, purchased the property at the

foreclosure sale. On January 7, 2010, First Jackson sent Paint

Rock a letter demanding possession of the sod farm within 10

days. Paint Rock claimed that it did not receive First

Jackson's demand-of-possession letter until January 16, 2010.

On January 14, 2010, Jimmy Blevins, president of First

Jackson, arrived at the sod farm to take possession of the

farm and the equipment on behalf of First Jackson. When

Blevins arrived at the sod farm, Paint Rock employees were

 4
1130480, 1130528
loading harvested sod onto a flatbed tractor-trailer for

delivery to a customer. Blevins informed the Paint Rock

employees that First Jackson now owned the sod farm, that the

employees could not remove the harvested sod, and that the

employees would be arrested for trespassing if they returned

to the sod farm.

 On January 21, 2010, First Jackson filed an ejectment

action against Paint Rock. On the same day, Paint Rock by

letter demanded access to the sod farm "to recover the

emblements in the form of sod which is being grown on the real

property recently foreclosed upon ...."2 Paint Rock also

requested the return of its equipment. First Jackson denied

Paint Rock's request. Paint Rock, relying on a section of the

Alabama Code that permits a tenant at will to harvest its

crop,3 counterclaimed for damages for harm suffered as the

result of being unable to harvest the sod. As relevant to this

 2
 "Emblements" are "[t]he growing crop annually produced
by labor, as opposed to a crop occurring naturally." Black's
Law Dictionary 636 (10th ed. 2014).
 3
 "The tenant at will is entitled to his emblements, if the
crop is sowed before notice to quit by the landlord, or the
tenancy otherwise suddenly terminated, as by sale of the
estate by the landlord, or by judicial sale, or death of the
landlord or tenant." § 35-9-2, Ala. Code 1975.
 5
1130480, 1130528
appeal, Paint Rock also sought damages for conversion of

"plats of sod" contained on the sod farm. On March 4, 2010,

First Jackson sold the sod farm to Mrs. Goodson. The deed

stated that the sale was subject to any claim Paint Rock may

have to the emblements growing on the property. On October 12,

2010, Paint Rock and Gerald T. Jones, Jr., filed a joint

third-party complaint against First Jackson and Mr. Goodson.4

Paint Rock alleged conversion and detinue, as well as the

emblements claim, against Goodson; Jones alleged conversion

and detinue against both First Jackson and Goodson. The third-

party complaint was later amended to add claims of wantonness

and negligence against both First Jackson and the Goodsons.

 After the trial court denied motions for a summary

judgment filed by First Jackson, Mr. Goodson, and Mrs.

Goodson, who had been added as a party, the case proceeded to

trial. At the close of Paint Rock and Jones's case, the trial

court granted a motion for a JML filed by First Jackson and

the Goodsons on Paint Rock's counterclaim for emblements on

 4
 Mrs. Goodson was not initially named as a third-party
defendant because Paint Rock and Jones mistakenly believed
that Mr. Goodson was the purchaser of the sod farm. In a later
amendment to the third-party complaint, Mrs. Goodson was added
as a third-party defendant and Cherry Jones, wife of Gerald T.
Jones, Jr., was added as a third-party plaintiff.
 6
1130480, 1130528
the ground that Paint Rock was not an at-will tenant as

required by § 35-9-2. After Paint Rock withdrew its detinue

claims and the trial court granted a JML on the wantonness

claims, only the conversion and negligence claims remained for

the jury to resolve.

 The jury awarded Paint Rock damages against First

Jackson, consisting of $18,500 for conversion of a sod cutter

and $10,890 for conversion of cut sod that had been loaded on

a tractor-trailer when First Jackson took possession of the

property on January 14, 2010. The jury also awarded Paint Rock

a total of $1,059 against the Goodsons for conversion of

business property and equipment. The jury entered verdicts for

First Jackson and the Goodsons on Jones's conversion and

negligence claims. Paint Rock appealed the JML in favor of the

defendants on the emblements claim;5 First Jackson cross-

appealed the judgment awarding Paint Rock damages for

conversion of the cut sod.

 II. Standard of Review

 In reviewing a JML, "[w]e must decide whether there was

substantial evidence, when viewed in the light most favorable

 5
 See supra note 1.
 7
1130480, 1130528
to the plaintiff, to warrant a jury determination." Alabama

Power Co. v. Aldridge, 854 So. 2d 554, 560 (Ala. 2002).

"[S]ubstantial evidence is evidence of such weight and quality

that fair-minded persons in the exercise of impartial judgment

can reasonably infer the existence of the fact sought to be

proved." West v. Founders Life Assurance Co. of Florida, 547

So. 2d 870, 871 (Ala. 1989). Questions of law are reviewed de

novo. Alabama Republican Party v. McGinley, 893 So. 2d 337,

342 (Ala. 2004).

 III. Analysis

A. Paint Rock's appeal of the denial of its emblements claim
(case no. 1130480)

 Paint Rock's claim for emblements arises under § 35-9-2:

"The tenant at will is entitled to his emblements, if the crop

is sowed before notice to quit by the landlord, or the tenancy

otherwise suddenly terminated, as by sale of the estate by the

landlord, or by judicial sale, or death of the landlord or

tenant." (Emphasis added.) The purpose of this statute is to

protect a farmer from economic harm caused by the sudden

termination of a month-to-month tenancy by the landlord

between the time a crop is planted and the time the crop is

 8
1130480, 1130528
ready for harvest.6 So long as the crop was sown "before

notice to quit by the landlord," the tenant at will may still

harvest the crop even though the tenancy in the land has

ended. Paint Rock's relationship with First Jackson, however,

was that of mortgagor to mortgagee, not tenant to landlord.

 In Lamar v. Johnson, 16 Ala. App. 648, 81 So. 140 (1919),

citing § 4733, Ala. Code 1907, the predecessor statute to §

35-9-2,7 the Court of Appeals held that a defaulted mortgagor

who was permitted to remain on the land by its mortgagee

assumed the status of a tenant at will.

 "In the absence of notice to quit possession or
 other steps by the mortgagee to recover possession,
 the mortgagor is not a wrongdoer or trespasser, but
 is a mere tenant at will of the mortgagee, and as
 such is entitled to claim the fructus industriales
 or emblements, if the crop is sown before notice to
 quit by the mortgagee."

16 Ala. App. at 649, 81 So. at 141. Thus, if, as Paint Rock

argues, its continuing occupation of the sod farm after its

 6
 "The purpose of the emblements doctrine is to protect the
interests of farmers to harvest crops on land that they
planted with the expectation that its bounty would be
available to them, but whose possessory rights have failed
through no fault of their own before the time for harvesting."
21A Am. Jur. 2d Crops § 26 (2014).
 7
 The language of § 4733, Ala. Code 1907, is identical to
that of § 35-9-2, Ala. Code 1975.
 9
1130480, 1130528
default in early 2009 was with First Jackson's permission,

Paint Rock was potentially entitled to harvest any crop sown

between the default on the mortgage and the notice to quit

mailed on January 7, 2010. "If the mortgagor is permitted to

remain in possession, he is the mere tenant at will of the

mortgagee." Buchmann v. Callahan, 222 Ala. 240, 242, 131 So.

799, 801 (1930). Without such permission, however, "he would

be a tenant at sufferance only." Miller v. Faust, 250 Ala.

545, 548, 35 So. 2d 162, 165 (1948).

 Paint Rock remained in possession of the sod farm from

the default in January 2009 until First Jackson ousted it from

the property on January 14, 2010. Whether that possession was

"at will" or "at sufferance" controls the resolution of Paint

Rock's emblements claim. Critical to this determination is the

effect on Paint Rock's at-will-tenancy argument of the

automatic stay in the bankruptcy proceeding. Although Paint

Rock does not address the effect of the bankruptcy stay in its

brief, it did make the following argument to the trial court:

"Paint Rock Turf was a debtor in possession in this bankruptcy

proceeding. That means they were there with the permission of

 10
1130480, 1130528
the creditors. So ... that makes them a tenant at will." First

Jackson and the Goodsons disagree.

 "The real import of the so-called 'automatic stay'
 was that [Paint Rock] (being in default and subject
 to foreclosure before it filed bankruptcy) was
 certainly not in possession of the real estate with
 the consent of [First Jackson], but was being kept
 in possession by the force of the Bankruptcy Code."

First Jackson's brief, at 23. "While the automatic stay

provisions of 11 U.S.C. § 362 do prevent creditors from

pursuing collection activity against a debtor (at least until

relief from the automatic stay may be granted), it does not

create an implied consent on the part of the creditor."

Goodsons' brief, at 18.

 "[A]s the automatic stay is essentially a court-ordered

injunction, any person or entity who violates the stay may be

found in contempt of court." Carver v. Carver, 954 F.2d 1573,

1578 (11th Cir. 1992). "An individual injured by any willful

violation of a stay ... shall recover actual damages,

including costs and attorneys' fees, and, in appropriate

circumstances, may recover punitive damages." 11 U.S.C. §

362(h). In the face of these sanctions, the notion that First

Jackson "consented" to Paint Rock's continuing occupation of

the sod farm during the bankruptcy proceedings is fanciful.

 11
1130480, 1130528
Submission to force majeure is not the same as consent to its

imposition. Because the automatic stay cannot be construed as

a grant of permission by First Jackson for Paint Rock as a

defaulting debtor in possession to remain on the property,

Paint Rock, while in bankruptcy, was not a tenant at will of

First Jackson, and Lamar is inapplicable. Section 35-9-2,

therefore, created neither a right of ingress for Paint Rock

to harvest its emblements after being ejected from the

property nor a corresponding claim for conversion when it was

denied such access.

 The trial court correctly entered a JML for the

defendants on Paint Rock's emblements claim.

B. First Jackson's cross-appeal of the denial of its motion
for a JML to reverse the jury's award of $10,890 for
conversion of pallets of sod (case no. 1130528)

 On January 14, 2010, two weeks after the foreclosure sale

and a week after First Jackson sent a notice to quit to Paint

Rock, employees of First Jackson noticed that sod was being

harvested and loaded onto a tractor-trailer on the foreclosed

property. The president of First Jackson, Jimmy Blevins,

ordered the Paint Rock employees off the property and secured

 12
1130480, 1130528
the tractor-trailer containing the cut sod.8 In response to

First Jackson's subsequent action for ejectment, Paint Rock

counterclaimed for the value of "the plats of sod on the real

property at issue." The jury awarded Paint Rock $10,890 in

damages for "conversion of tractor trailer sod."

 First Jackson argues that the tractor-trailer sod was its

property by reason of the December 30, 2009, foreclosure.

First Jackson's brief, at 27. Paint Rock responds that the

trial court correctly ruled that First Jackson's motion on

this issue was untimely. Paint Rock's brief, at 13-31. First

Jackson argues in reply that pursuant to Rule 50, Ala. R. Civ.

P., its motion for a JML on the cut-sod claim was timely.

First Jackson's reply brief, at 3-5.

 During the discussion on a JML at the close of Paint

Rock's case, the trial court, though equivocating, decided to

let the issue of the conversion of the tractor-trailer sod go

to the jury. First Jackson did not specifically object. Later

that day during the jury-charge conference the trial court

stated that Paint Rock had a claim of "conversion of the

 8
 Blevins testified that, although he placed a new padlock
on the gate to the farm on January 14, 2010, the lock was
found cut the next day and the tractor-trailer and sod
removed.
 13
1130480, 1130528
tractor-trailer of sod of January 14, 2010." First Jackson did

not object. Following the charge conference, closing argument

occurred but was not completed when the court adjourned for

the day. The next morning, before closing argument resumed,

First Jackson moved to dismiss the claim alleging conversion

of the sod on the truck on the ground that the JML denying

Paint Rock's claim for emblements necessarily meant that after

the foreclosure sale First Jackson owned the sod farm

outright. Paint Rock argued that the motion was untimely

because First Jackson did not raise its objection at the

charge conference and that a change in the court's ruling

would prejudice Paint Rock, who had already delivered its

closing argument.

 The trial court denied the motion as untimely. Counsel

for First Jackson stated: "We take exception to the

untimeliness because a motion for a judgment notwithstanding

a verdict is to be made at the conclusion of the evidence and

before the case is submitted to the jury. ... And we fall

within that parameter." The trial court indicated that First

Jackson could submit a postjudgment motion on the issue, if

necessary. Closing argument then resumed, followed by the

 14
1130480, 1130528
court's instructions to the jury, which included a charge on

"conversion of a tractor-trailer load of sod." After the jury

awarded Paint Rock $10,890 for conversion of the cut sod,

First Jackson filed a postjudgment motion renewing its request

for a JML on this issue. The trial court denied the motion.

 "Motions for judgment as a matter of law may be made at

any time before submission of the case to the jury." Rule

50(a)(2), Ala. R. Civ. P. First Jackson's motion to dismiss

the sod-on-the-truck claim occurred toward the end of closing

argument and before the jury was charged or had begun to

deliberate. Thus, by the plain language of Rule 50(a)(2), the

motion was timely. To preserve for appellate review an issue

raised by a preverdict JML motion, a party must also renew the

motion after the verdict is rendered. King Mines Resort, Inc.

v. Malachi Mining & Minerals, Inc., 518 So. 2d 714, 716 (Ala.

1987). First Jackson satisfied this requirement.

 First Jackson's preverdict JML motion was timely, and the

denial of that motion was properly preserved for review. We

thus address the merits of the motion. Because the trial court

correctly entered a JML on Paint Rock's claim for emblements,

it follows that Paint Rock did not have a property interest in

 15
1130480, 1130528
the sod on the farm after First Jackson's purchase of the

property at the foreclosure sale on December 30, 2013. See §

35-10-1, Ala. Code, 1975 (stating that a conveyance of lands

to a purchaser at a foreclosure sale vests the legal title in

such purchaser). Thus, First Jackson could not be liable on

January 14, 2010, for conversion of what was then its own

property.9

 IV. Conclusion

 In case no. 1130480, the judgment of the trial court is

affirmed. In case no. 1130528, the judgment of the trial court

is reversed, and the case is remanded to the trial court to

enter judgment in favor of First Jackson.

 1130480 -- AFFIRMED.

 1130528 -- REVERSED AND REMANDED.

 Main, J., concurs.

 Murdock, J., concurs specially.

 Bolin and Bryan, JJ., concur in the result.

 9
 Gerald T. Jones, Jr., testified at trial that sod has to
be cut, shipped, and laid the same day for the product to be
marketable. Thus, the sod on the truck on January 14, 2010,
was of necessity harvested after December 30, 2013.
 16
1130480, 1130528
MURDOCK, Justice (concurring specially).

 I concur with the main opinion. I write separately to

question whether resolution of the question raised by the

assertion by Paint Rock Turf, LLC, that Paint Rock is entitled

to the sod emblements turns not, at least not per se, on

whether Paint Rock's interest in the land in the context of a

bankruptcy stay should be considered a tenancy at will or a

tenancy at sufferance, but instead on the issue of fault.

First, there is some Alabama authority that the doctrine of

emblements applies both to tenants at will and to tenants at

sufferance. See First Nat'l Bank v. Federal Land Bank of New

Orleans, 225 Ala. 387, 389, 143 So. 567, 568 (1932) (stating

that "after default in the mortgage, the mortgagor became the

tenant at will of, or a tenant at sufferance of, the

mortgagee, one or the other depending upon the facts of the

case, and as such was entitled to the crops"); Bates v. Bank

of Moulton, 226 Ala. 679, 682, 148 So. 150, 153 (1933) (same).

 Second, the Court in Gardner v. Lanford, 86 Ala. 508,

510, 5 So. 879, 880 (1889), found a tenant to be entitled to

emblements where "the term of the lessees, contingent from its

inception on the exercise of the statutory privilege of

 17
1130480, 1130528

redemption by the debtor ... was itself uncertain, and, if the

tender and offer to redeem were made in compliance with the

law, was terminated at a time and in a manner which in legal

contemplation was unexpected to the lessor and lessees."

(Emphasis added.) Likewise, in Florala Sawmill Co. v. J.T.

Parrish, 155 Ala. 462, 465, 46 So. 461, 462 (1908), the Court

observed that, "as between landlord and tenant, where the

termination of the tenancy is uncertain, as where the lease is

for life, when the tenancy is brought to an end by the

happening of the uncertain event, the tenant is entitled to

emblements ...." (Emphasis added.) Query whether a

termination of a tenancy due to the fault of the tenant can be

"in legal contemplation ... unexpected" to the tenant and

whether it is this gravamen, i.e., fault, that is dispositive,

rather than the seemingly metaphysical choice, at least in

the present circumstances, between the tenancy-at-will label

and the tenancy-at-sufferance label.

 Other authorities consider the issue whether a tenant has

lost possession as a result of his or her fault. As one

treatise explains:

 "It is a general rule that if one's estate in
 land comes to an end at a time which he could not

 18
1130480, 1130528
 have previously ascertained, without his fault and
 without any action on his part to bring about such
 a result, he is entitled to take the annual crops
 planted by him before the termination of the estate
 ...."

2 Basil Jones, Tiffany Real Property § 599 (3d ed. 1939)

(emphasis added). See, e.g., 25 C.J.S. Crops § 16 (2012)

(stating that "[t]he purpose of the emblements doctrine is to

protect the interests of farmers to harvest crops on land that

they planted with the expectation that its bounty would be

available to them but whose possessory rights have failed

through no fault of their own before time for harvesting"

(emphasis added)); 141 A.L.R. 1243 (1942) (observing that

"[t]he doctrine or right of emblements entitles one who holds

land for a period subject to termination at a time which he

cannot ascertain beforehand to remove from the land after the

termination of his tenancy the annual crops or emblements

which he has planted thereon prior to such termination, if the

termination is brought about without any fault on his part"

(emphasis added)).

 It is undisputed that Paint Rock defaulted on its

mortgage obligation. I therefore agree that it was not

entitled to the sod emblements in question.

 19