MOORE, Chief Justice.
Paint Rock Turf, LLC (“Paint Rock”), appeals from a judgment as a matter of law (“JML”) entered by the Madison Circuit Court on its claim for emblements under § 35-9-2, Ala.Code 1975, against First Jackson Bank (“First Jackson”) and Wayne A. Goodson and his wife Christian Goodson.[1] First Jackson cross-appeals from the trial court’s denial of its post-judgment motion for a JML on Paint Rock’s claim alleging conversion of pallets of sod.

I. Facts and Procedural History

On April 30, 2004, Paint Rock purchased a sod farm and related farm equipment from Eufala Corporation. The sod farm consisted of 1,171 acres of land upon which were grown 580 acres of Bermuda and Zoysia sod grasses. To partially finance the purchase, Paint Rock borrowed $1,706,250 from First Jackson. The loan was secured by a mortgage on the sod farm and a security interest in the equipment used on the farm.
*992 By February 2009, reflecting in part a drop in demand for sod caused by the collapsing market for new homes, Paint Rock had defaulted on the loan. On February 11, 2009, Paint Rock filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Alabama. The filing of the petition operated as an automatic stay of “any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.” 11 U.S.C. § 362(a)(3). The stay precluded First Jackson from foreclosing on the sod farm or retaking the equipment. The petition was dismissed August 12, 2009. On October 30, 2009, First Jackson published in the Madison County Record the first of three notices of a foreclosure sale on the property scheduled for noon on November 19, 2009. On the morning of November 19, 2009, Paint Rock filed a second bankruptcy petition, which stayed the scheduled November 19 sale, and which was dismissed on December 8, 2009, for failure to file the proper schedules and statements. On December 18, 2009, First Jackson published a notice that the foreclosure sale was rescheduled for December 30, 2009. On December 26, 2009, Paint Rock filed its third bankruptcy petition. Four days later, the bankruptcy court lifted the automatic stay, expressly finding that Paint Rock had misused “the bankruptcy process in an attempt to wrongfully hinder and delay [First Jackson’s] efforts to foreclose its mortgage and security agreement.” See Barclays-American/Bus. Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broad., Inc.), 871 F.2d 1023, 1026 (11th Cir.1989) (noting that “a petition filed in bad faith ... justifies relief from a stay”).
The same day, December 30, 2009, immediately following the lifting of the stay by the bankruptcy court, First Jackson, as the high bidder, purchased the property at the foreclosure sale. On January 7, 2010, First Jackson sent Paint Rock a letter demanding possession of the sod farm within 10 days. Paint Rock claimed that it did not receive First Jackson’s demand-of-possession letter until January 16, 2010. On January 14, 2010, Jimmy Blevins, president of First Jackson, arrived at the sod farm to take possession of the farm and the equipment on behalf of First Jackson. When Blevins arrived at the sod farm, Paint Rock employees were loading harvested sod onto a flatbed tractor-trailer for delivery to a customer. Blevins informed the Paint Rock employees that First Jackson now owned the sod farm, that the employees could not remove the harvested sod, and that the employees would be arrested for trespassing if they returned to the sod farm.
On January 21, 2010, First Jackson filed an ejectment action against Paint Rock. On the same day, Paint Rock by letter demanded access to the sod farm “to recover the emblements in the form of sod which is being grown on the real property recently foreclosed upon....”[2] Paint Rock also requested the return of its equipment. First Jackson denied Paint Rock’s request. Paint Rock, relying on a section of the Alabama Code that permits a tenant at will to harvest its crop,[3] counterclaimed for *993 damages for harm suffered as the result of being unable to harvest the sod. As relevant to this appeal, Paint Rock also sought damages for conversion of “plats of sod” contained on the sod farm. On March 4, 2010, First Jackson sold the sod farm to Mrs. Goodson. The deed stated that the sale was subject to any claim Paint Rock may have to the emblements growing on the property. On October 12, 2010, Paint Rock and Gerald T. Jones, Jr., filed a joint third-party complaint against First Jackson and Mr. Goodson.[4] Paint Rock alleged conversion and detinue, as well as the em-blements claim, against Goodson; Jones alleged conversion and detinue against both First Jackson and Goodson'. The third-party complaint was later amended to add claims of wantonness and negligence against both First Jackson and the Goodsons.
After the trial court denied motions for a summary judgment filed by First Jackson, Mr. Goodson, and Mrs. Goodson, who had been added as a party, the case proceeded to trial. At the close of Paint Rock and Jones’s case, the trial court granted a motion for a JML filed by First Jackson and the Goodsons on Paint Rock’s counterclaim for emblements on the ground that Paint Rock was not an at-will tenant as required by § 35-9-2. After Paint Rock withdrew its detinue claims and the trial court granted a JML on the wantonness claims, only the conversion and negligence claims remained for the jury to resolve.
The jury awarded Paint Rock damages against First Jackson, consisting. of $18,500 for conversion of a sod cutter and $10,890 for conversion of cut sod that had been loaded on a tractor-trailer when First Jackson took possession of the property on January 14, 2010. The jury also awarded Paint Rock a total of $1,059 against the Goodsons for conversion of business property and equipment. The jury entered verdicts for First Jackson and the Good-sons on Jones’s conversion and negligence claims. Paint Rock appealed the JML in favor of the defendants on the emblements claim;[5] First Jackson cross-appealed the judgment awarding Paint Rock damages for conversion of the cut sod.

II. Standard, of Review

In reviewing a JML, “[w]e must decide whether there was substantial evidence, when viewed in the light most favorable to the plaintiff, to warrant a jury determination.” Alabama Power Co. v. Aldridge, 854 So.2d 554, 560 (Ala.2002). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).

III. Analysis

A. Paint Rock’s appeal of the denial of its emblements claim (case no. 11804.80)
Paint Rock’s claim for emblements arises under § 35-9-2: “The tenant at will *994 is entitled to his emblements, if the crop is sowed before notice to quit by the landlord, or the tenancy otherwise suddenly terminated, as by sale of the estate by the landlord, or by judicial sale, or death of the landlord or tenant.” (Emphasis added.) The purpose of this statute is to protect a farmer from economic harm caused by the sudden termination of a month-to-month tenancy by the landlord between the time a crop is planted and the time the crop is ready for harvest.[6] So long as the crop was sown “before notice to quit by the landlord,” the tenant at will may still harvest the crop even though the tenancy in the land has ended. Paint Rock’s relationship with First Jackson, however, was that of mortgagor to mortgagee, not tenant to landlord.
In Lamar v. Johnson, 16 Ala.App. 648, 81 So. 140 (1919), citing § 4733, Ala.Code 1907, the predecessor statute to § 35-9-2,[7] the Court of Appeals held that a defaulted mortgagor who was permitted to remain on the land by its mortgagee assumed the status of a tenant at will.
“In the absence of notice to quit possession or other steps by the mortgagee to recover possession, the mortgagor is not a wrongdoer or trespasser, but is a mere tenant at will of the mortgagee, and as such is entitled to claim the fructus in-dustriales or emblements, if the crop is sown before notice to quit by the mortgagee.”
16 Ala.App. at 649, 81 So. at 141. Thus, if, as Paint Rock argues, its continuing occupation of the sod farm after its default in early 2009 was with First Jackson’s permission, Paint Rock was potentially enti-tied to harvest any crop sown between the default on the mortgage and the notice to quit mailed on January 7, 2010. “If the mortgagor is permitted to remain in possession, he is the mere tenant at will of the mortgagee.” Buchmann v. Callahan, 222 Ala. 240, 242, 131 So. 799, 801 (1930). Without such permission, however, “he would be a tenant at sufferance only.” Miller v. Faust, 250 Ala. 545, 548, 35 So.2d 162, 165 (1948).
Paint Rock remained in possession of the sod farm from the default in January 2009 until First Jackson ousted it from the property on January 14, 2010. Whether that possession was “at will” or “at sufferance” controls the resolution of Paint Rock’s emblements claim. Critical to this determination is the effect on Paint Rock’s at-will-tenancy argument of the automatic stay in the bankruptcy proceeding. Although Paint Rock does not address the effect of the bankruptcy stay in its brief, it did make the following argument to the trial court: “Paint Rock Turf was a debtor in possession in this bankruptcy proceeding. That means they were there with the permission of the creditors. So ... that makes them a tenant at will.” First Jackson and the Goodsons disagree.
“The real import of the so-called ‘automatic stay’ was that [Paint Rock] (being in default and subject to foreclosure before it filed bankruptcy) was certainly not in possession of the real estate with the consent of [First Jackson], but was being kept in possession by the force of the Bankruptcy Code.”
First Jackson’s brief, at 23. “While the automatic stay provisions of 11 U.S.C. *995 § 362 do prevent creditors from pursuing collection activity against a debtor (at least until relief from the automatic stay may be granted), it does not create an implied consent on the part of the creditor.” Goodsons’ brief, at 18.
“[A]s the automatic stay is essentially a court-ordered injunction, any person or entity who violates the stay may be found in contempt of court.” Carver v. Carver, 954 F.2d 1573, 1578 (11th Cir.1992). “An individual injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys’ fees, and, in appropriate circumstances, may recover punitive damages.” 11 U.S.C. § 362(h). In the face of these sanctions, the notion that First Jackson “consented” to Paint Rock’s continuing occupation of the sod farm during the bankruptcy proceedings is fanciful. Submission to force majeure is not the same as consent to its imposition. Because the automatic stay cannot be construed as a grant of permission by First Jackson for Paint Rock as a defaulting debtor in possession to remain on the property, Paint Rock, while in bankruptcy, was not a tenant at will of First Jackson, and Lamar is inapplicable. Section 35-9-2, therefore, created neither a right of ingress for Paint Rock to harvest its emblements after being ejected from the property nor a corresponding claim for conversion when it was denied such access.
The trial court correctly entered a JML for the defendants on Paint Rock’s emble-ments claim.
B. First Jackson’s cross-appeal of the denial of its motion for a JML to reverse the jury’s award of $10,890 for conversion of pallets of sod (case no. 1130528)
On January 14, 2010, two weeks after the foreclosure sale and a week after First Jackson sent a notice to quit to Paint Rock, employees of First Jackson noticed that sod was being harvested and loaded onto a tractor-trailer on the foreclosed property. The president of First Jackson, Jimmy Blevins, ordered the Paint Rock employees off the property and secured the tractor-trailer containing the cut sod.[8] In response to First Jackson’s subsequent action for ejectment, Paint Rock counterclaimed for the value of “the plats of sod on the real property at issue.” The jury awarded Paint Rock $10,890 in damages for “conversion of tractor trailer sod.”
First Jackson argues that the tractor-trailer sod was its property by reason of the December 30, 2009, foreclosure. First Jackson’s brief, at 27. Paint Rock responds that the trial court correctly ruled that First Jackson’s motion on this issue was untimely. Paint Rock’s brief, at 13-31. First Jackson argues in reply that pursuant to Rule 50, Ala. R. Civ. P., its motion for a JML on the cut-sod claim was timely. First Jackson’s reply brief, at 3-5.
During the discussion on a JML at the close of Paint Rock’s case, the trial court, though equivocating, decided to let the issue of the conversion of the tractor-trailer sod go to the jury. First Jackson did not specifically object. Later that day during the jury-charge conference the trial court stated that Paint Rock had a claim of “conversion of the tractor-trailer of sod of January 14, 2010.” First Jackson did not object. Following the charge conference, closing argument occurred but was not completed when the court adjourned for the day. The next morning, before closing argument resumed, First Jackson moved to dismiss the claim alleging conversion of the sod on the truck on the ground that the JML denying Paint Rock’s claim for *996 emblements necessarily meant that after the foreclosure sale First Jackson owned the sod farm outright. Paint Rock argued that the motion was untimely because First Jackson did not raise its objection at the charge conference and that a change in the court’s ruling would- prejudice Paint Rock, who had already delivered its closing argument.
The trial court denied the motion as untimely. Counsel for First Jackson stated: “We take exception to the untimeliness because a motion for a judgment notwithstanding a verdict is to be made at the conclusion of the evidence and before the case is submitted to the jury.... And we fall within that parameter.” The trial court indicated that First Jackson could submit a postjudgment motion on the issue, if necessary. Closing argument then resumed, followed by the court’s instructions to the jury, which included a charge on “conversion of a tractor-trailer load of sod.” After the jury awarded Paint Rock $10,890 for conversion of the cut sod, First Jackson filed a postjudgment motion renewing its request for a JML on this issue. The trial court denied the motion.
“Motions for judgment as a matter of law may be made at any time before submission of the case to the jury.” Rule 50(a)(2), Ala. R. Civ. P. First Jackson’s motion to dismiss the sod-on-the-truck claim occurred toward the end of closing argument and before the jury was charged or had begun to deliberate. Thus, by the plain language of Rule 50(a)(2), the motion was timely. To preserve for appellate review an issue raised by a preverdict JML motion, a party must also renew the motion after the verdict is rendered. King Mines Resort, Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714, 716 (Ala.1987). First Jackson satisfied this requirement.
First Jackson’s preverdict JML motion was timely, and the denial of that motion was properly preserved for review. We thus address the merits of the motion. Because the trial court correctly entered a JML on Paint Rock’s claim for emble-ments, it follows that Paint Rock did not have a property interest in the sod on the farm after First Jackson’s purchase of the property at the foreclosure sale on December 30, 2013. See § 35-10-1, Ala.Code, 1975 (stating that a conveyance of lands to a purchaser at a foreclosure sale vests the legal title in such purchaser). Thus, First Jackson could not be liable on January 14, 2010, for conversion of what was then its own property.[9]

IV. Conclusion

In case no. 1130480, the judgment of the trial court is affirmed. In case no. 1130528, the judgment of the trial court is reversed, and the case is remanded to the trial court to enter judgment in favor of First Jackson.
1130480 — AFFIRMED.
1130528 — REVERSED AND REMANDED.
MAIN, J., concurs.
MURDOCK, J., concurs specially.
BOLIN and BRYAN, JJ., concur in the result.

. Although Gerald T. Jones, Jr., whose father is the sole member of Paint Rock, is designated as an appellant on the notice of appeal and on Paint Rock's briefs, only Paint Rock asserted an emblements claim in the trial court. Jones did not appeal the jury verdicts on the claims he brought in the trial court. Thus, none of his claims are before us on appeal. Cherry Jones, Gerald’s wife and a third-party plaintiff in the trial court, has not appealed. Functionally, Paint Rock is the only appellant in case no. 1130480, and we have restyled the appeal to reflect that.

. "Emblements” are "[t]he growing crop annually produced by labor, as opposed to a crop occurring naturally.” Black's Law Dictionary 636 (10th ed.2014).

. “The tenant at will is entitled to his emble-ments, if the crop is sowed before notice to *993 quit by the landlord, or the tenancy otherwise suddenly terminated, as by sale of the estate by the landlord, or by judicial sale, or death of the landlord or tenant.” § 35-9-2, Ala.Code 1975.

. Mrs. Goodson was not initially named as a third-party defendant because Paint Rock and Jones mistakenly believed that Mr. Goodson was the purchaser of the sod farm. In a later amendment to the third-party complaint, Mrs. Goodson was added as a third-party defendant and Cherry Jones, wife of Gerald T. Jones, Jr., was added as a third-party plaintiff.

. See supra note 1.

. "The purpose of the emblements doctrine is to protect the interests of farmers to harvest crops on land that they planted with the expectation that its bounty would be available to them, but whose possessory rights have failed through no fault of their own before the time for harvesting.” 21A Am.Jur.2d Crops § 26 (2014).

. The language of § 4733, Ala.Code 1907, is identical to that of § 35-9-2, Ala.Code 1975.

. Blevins testified that, although he placed a new padlock on the gate to the farm on January Í4, 2010, the lock was found cut the next day and the tractor-trailer and sod removed.

. Gerald T. Jones, Jr., testified at trial that sod has to be cut, shipped, and laid the same day for the product to be marketable. Thus, the sod on the truck on January 14, 2010, was of necessity harvested after December 30, 2013.